1   Michael J. Bettinger (SBN 122196)
    mbettinger@sidley.com
2   Holly Hogan (SBN 238714)
    hhogan@sidley.com
3   SIDLEY AUSTIN LLP
    555 California Street, Suite 2000
4   San Francisco, CA  94104
    Telephone:  (415) 772-1200
5   Facsimile:  (415) 772-7400

6   Attorneys for Defendants
    AMAZON.COM, INC. and
7   RETAIL CONVERGENCE, INC.,
    dba SMARTBARGAINS.COM

8   *Additional counsel listed on signature page*

9                       UNITED STATES DISTRICT COURT

10                     NORTHERN DISTRICT OF CALIFORNIA

11                        SAN FRANCISCO DIVISION

12

13  SPEEDTRACK, INC.,                    )   Case No. 09-cv-4479-JSW
                                         )
14              Plaintiff,               )
                                         )
    vs.                                  )   **DEFENDANTS' NOTICE OF MOTION**
15                                       )   **AND MOTION TO DISMISS THE**
                                         )   **AMENDED COMPLAINT UNDER FED. R.**
16  AMAZON.COM, INC.; COSTCO             )   **CIV. P 12(B)(6)**
    WHOLESALE CORPORATION; 1-800-        )
17  FLOWERS.COM, INC.;                   )   Date:      August 12, 2016
    BARNESANDNOBLE.COM, LLC;             )   Time:      9:00 a.m.
18  BARNESANDNOBLE.COM, INC.; THE        )   Place:     Courtroom 5, 2nd Floor
    HOME DEPOT, INC.; NIKE, INC.;        )
19  NORTHERN TOOL & EQUIPMENT            )
    CATALOG CO., INC.; J & R             )
20  ELECTRONICS, INC.; DELL, INC.; BEST  )
    BUY CO.; BESTBUY.COM, LLC;           )
21  SYSTEMAX, INC.; OFFICEMAX, INC.;     )
    MACY'S INC.; MACYS.COM, INC.;        )
22  OVERSTOCK.COM, INC.; RECREATIONAL    )
    EQUIPMENTS, INC; VALUE VISION        )
23  INTERNATIONAL, INC.; DBA             )
    SHOPNBC.COM; B & H FOTO &            )
24  ELECTRONICS CORP.; HEWLETT-          )
    PACKARD COMPANY; REDCATS USA,        )
25  INC.; RETAIL CONVERGENCE, INC., DBA  )
    SMARTBARGAINS.COM,                   )
26                                       )
                Defendants.              )
27  _____)

28

# TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................................ 1

ISSUE TO BE DECIDED ........................................................................................................... 1

I.     SUMMARY OF THE ARGUMENT ............................................................................... 1

II.    STATEMENT OF FACTS ............................................................................................... 2

       A.     The Parties ........................................................................................................... 2

       B.     The '360 Patent ................................................................................................... 2

            1.     The Specification ................................................................................... 2

            2.     The Claims ............................................................................................. 6

       C.     This Action ........................................................................................................... 7

III.   THE ASSERTED CLAIMS VIOLATE THE RULE AGAINST CLAIMING AN ABSTRACT IDEA ........................................................................................................... 7

       A.     § 101 Protects the Public from Patents Claiming Only Abstract Ideas ................. 7

       B.     The '360 Patent Claims an Abstract Idea of File Organization and Access ........... 8

       C.     The '360 Patent Adds Nothing Inventive to the Abstract Idea ............................ 13

IV.   CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alice Corp. Pty. Ltd v. CLS Bank Intern.*,
134 S.Ct. 2347 (2014) ................................................................................................ *passim*

*Bascom Research LLC v. LinkedIn, Inc.*,
77 F. Supp. 3d 940 (N.D. Cal. 2015) ............................................................... 2, 10, 12

*Bilski v. Kappos*,
561 U.S. 593 (2010) ....................................................................................................... 1

*buySAFE, Inc. v. Google*,
765 F.3d 1350 (Fed. Cir. 2014) .................................................................................. 15

*Cogent Medicine, Inc. v. Elsevier, Inc.*,
70 F. Supp. 3d 1058 (N.D. Cal. 2014) ..................................................... 10, 12, 14, 15

*Collarity, Inc. v. Google, Inc.*,
Case No. 11-1103-MPT, 2015 WL 7597413 (D. Del. Nov. 25, 2015)........................ 11

*Content Extraction and Transmission LLC v. Wells Fargo Bank et al.*,
776 F.3d 1343 (Fed. Cir. 2014)................................................................................ 6, 8

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) ............................................................................ 12, 13

*Datatrak Int'l, Inc. v. Medidata Solutions, Inc.*,
Case No. 1:11-cv-458, 2015 WL 6870109 (N.D. Ohio Nov. 6, 2015)............... 8, 11, 14

*DDR Holdings, LLC v. Hotels.com, LP*,
773 F.3d 1245 (Fed. Cir. 2014)........................................................................... 10, 11

*Enfish v. Microsoft Corp.*,
2016 U.S. App. LEXIS 8699 (Fed. Cir. May 12, 2016) ...................................... *passim*

*Internet Patents Corp. v Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015)........................................................................ 10, 12, 15

*Klaustech, Inc. v. AdMob, Inc.*,
Case No. 10-05899 JSW, 2015 WL 10791915 (N.D. Cal. Aug. 31, 2015)................... 10

*Market Track LLC v. Efficient Collaborative Retail Marketing, LLC*,
Case No. 11-cv-4957, 2015 WL 3637740 (N.D. Ill. Jun. 12, 2015)......................... 8, 15

*MyMedicalRecords, Inc. v. Walgreen Co.*,
Case No. 2:13-cv-00631-ODW, 2014 WL 7339201 (C.D. Cal. Dec. 23, 2014) .......... 11

*OIP Tech., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015)..................................................................................8, 14

*Preservation Wellness Tech. v. Allscripts Healthcare Solutions*,
    Case No. 2:15-cv-1559-WCB, 2016 WL 2742379 (E.D. Tex. May 10, 2016) ..................9, 12, 13

*Shortridge v. Foundation Construction Payroll Service, LLC, et al.*,
    Case No. 14-cv-04850-JCS, 2015 WL 1739256 (N.D. Cal. Apr. 14, 2015) ................................14

*SpeedTrack, Inc. v. Endeca Tech., Inc.*,
    524 Fed. Appx. 651 (Fed. Cir. 2013) .......................................................................................3, 8

*TLI Commc'ns LLC v. AV Auto., L.L.C.*,
    2016 U.S. App. LEXIS 8970 (Fed. Cir. May 17, 2016) ..................................................... *passim*

*Tuxis Technologies, LLC v. Amazon.com, Inc.*,
    Case No. 13–1771–RGA, 2015 WL 1387815 (D. Del. Mar. 25, 2015) ........................................13

*In re West View Research LLC*,
    Case No. 14-cv-2675-CAB, 2015 WL 9685577 (S.D. Cal. Dec. 10, 2015)..................................14

**Statutes**

35 U.S.C. § 101 ............................................................................................................... *passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................1

# NOTICE OF MOTION

NOTICE TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on August 12, 2016 at 9:00 a.m., or as soon thereafter as the parties are heard, in the courtroom of the Honorable Jeffrey S. White, located at Courtroom 5, 2nd Floor, 1301 Clay Street, Oakland, CA 94612, Defendants will and hereby do move to dismiss the Amended Complaint (Dkt. #143) pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the asserted claims of U.S. Patent No. 5,544,360 ("'360 patent"), attached as Exs. 1-2 of Dkt. #143, claim unpatentable subject matter in violation of 35 U.S.C. § 101. The motion is based upon this Notice, the Memorandum of Points and Authorities, the pleadings in the record, all matters of which the Court may take judicial notice, and any other argument or evidence that may be presented in advance of or at any hearing of this Motion.

# ISSUE TO BE DECIDED

Whether the '360 patent claims unpatentable subject matter in violation of 35 U.S.C. § 101?

## I.  SUMMARY OF THE ARGUMENT

An "idea of itself is not patentable." *Alice Corp. Pty. Ltd v. CLS Bank Intern.*, 134 S.Ct. 2347, 2355-2357 (2014). That 150-year-old rule is now a staple of modern patent litigation. But what turns a naked idea into a patentable invention? The Supreme Court explained that the machine-or-transformation test is one "important and useful clue." *Bilski v. Kappos*, 561 U.S. 593, 601, 603 (2010). Another important clue was announced by the Federal Circuit in two companion cases decided last month. *TLI Commc'ns LLC v. AV Auto., L.L.C.*, 2016 U.S. App. LEXIS 8970 (Fed. Cir. May 17, 2016); *Enfish v. Microsoft Corp.*, 2016 U.S. App. LEXIS 8699 (Fed. Cir. May 12, 2016). There, the Court distinguished between two categories of patents. The first category involves ideas untethered to any specific technology or way of achieving specific results. These patents eschew technical details about how their solutions actually work. In their stead are vague, functional aspirations about what the patents somehow achieve. The second category addresses problems that are, themselves, unique to computing, and do so with specific implementations of their solutions. These patents say far more than *what* a given patent achieves. They explain *how*. The first group is hostile to our patent system; the second is the reason it exists. The first attempts to ensnare every

1   way to implement an idea; the second claims the patentee's own particular way.  The first is the

2   definition of abstraction; the second is the hallmark of invention.

3   The '360 patent falls into the first group—a classic example of "patents involving the

4   creation and organization of data that have been invalidated after *Alice*."  *Bascom Research LLC v.*

5   *LinkedIn, Inc.*, 77 F. Supp. 3d 940, 950 (N.D. Cal. 2015).  It purports to solve a file organization

6   problem that has long-frustrated humanity; that is, the difficulty in storing and locating a file that

7   logically belongs to more than one folder.  This problem has no mooring in technology.  The Court

8   can take the patent at its word on that point.  It concedes that the "same problem" exists in paper

9   filing systems.  '360 Pat., 2:19-20.  SpeedTrack's purported solution does not involve any particular

10   technology, either.  It simply discards folders in favor of organizing and searching for files using

11   labels—an abstract idea, and one that can be implemented by any skilled file clerk.  Missing from

12   the patent is anything resembling the hard work of invention.  There is no new hardware, software,

13   or programming.  The patent offers no technological advance, and, at best, is simply a method of

14   organizing information.  Following *Alice*, *TLI*, and *Enfish*, a patent of this sort cannot stand.

15   **II.    STATEMENT OF FACTS**

16   **A.    The Parties**

17   SpeedTrack is the '360 patent's current owner.  SpeedTrack makes no claim to having any

18   products, or any business beyond monetizing patents through litigation.  *See generally* Dkt. No. 143.

19   The Defendants are a diverse group of technology and retail companies that have shaped the

20   way that millions of consumers buy products online through their innovative retail websites.

21   **B.    The '360 Patent**

22   The '360 patent was issued nearly two decades ago, on August 6, 1996, to a prior assignee.

23   It is entitled "Method for Accessing Computer Files and Data, Using Linked Categories Assigned to

24   Each Data File Record on Entry of the Data File Record."  The patent expired on August 6, 2013.

25   **1.    The Specification**

26   The '360 patent relates to organizing and accessing files "according to user-designated

27   criteria" in computer filing systems.  '360 Pat., 1:22-25.  These systems mirror a mainstay of law

28   firms, home offices, mechanic shops, dentist offices, and other offices with large volumes of paper

2

files—namely, the filing cabinet:

> Many currently-existing computer file control systems employ a hierarchical filing structure. **This system emulates commonly-used paper filing systems**….A typical computer system organizes data into **files (analogous to papers in a paper filing system)** and **directories (analogous to file folders and hanging files)**…in graphically-oriented computer systems, **directories are something known as "folders."**

'360 Pat., 1:20, 28-31, 38-43 (emphasis added).  The problem with this long-standing structure is that "[q]uite often a document may logically belong with many different folders, with the result that it is difficult to find a desired document once the document has been filed," and especially so when the number and type of documents is voluminous.  '360 Pat., 2:2-23.  "The same problem," the patent explains, "arises in paper filing systems."  *Id*., 2:19-20.[1]

The patent purports to solve this organizational problem—ubiquitous to computer and paper filing systems alike—with a commonsense solution:  Get rid of folders, and instead, organize and search for files based on descriptive labels.  The goal is to "provide a method for accessing files consonant with the way users think of them, and not limited to how such files are stored in the computer."  *Id*., 2:51-53.  For example, by labeling a document with the category descriptions LETTERS and JONES CASE, a user may locate documents more easily than if the user had to choose between the LETTERS folder and the JONES folder when storing the document (and then remember that choice days, weeks, and years later).  *See id*., 2:1-48.

The exemplary user interface is titled "File Clerk"—as it should be.  *Id*., Fig. 5.  A file clerk at any law firm, company or other document repository can organize and access files in either computer or paper form using the same steps disclosed in the patent:  (1) **create a table** of category descriptions with no hierarchical relationship that are used to label files (which the patent sometimes refers to as documents); (2) **create a directory** to record the labeled category and other information about each document; (3) **create a search filter** of category descriptions to search the directory in such a way—any way, actually—that guarantees at least one result.  *SpeedTrack, Inc. v. Endeca Tech., Inc.*, 524 Fed. Appx. 651, 653 (Fed. Cir. 2013); '360 Pat., Claims 1, 15, 20, 22.

---

[1] Computer systems are "more general" and "capable of more extensive use" because of a filing cabinet's size: "a filing cabinet may contain 4 or 5 drawers.  Each drawer may contain perhaps a dozen or so hanging files and each file may contain two or three file folders."  *Id*., 1:21-37.

3

1       Our exemplary file clerk, who we will call Frank, begins by ***creating…a table of category***

2   ***descriptions*** with no hierarchical relationship.  With a pencil and paper, Frank creates a table "with

3   entries comprising lists of category names or descriptions."  *See* '360 Pat., 4:42-43; 5:4-10, 5:32-39.

4   Frank draws his table to resemble the one in Figure 3, though, "of course," as the patent explains,

5   "the table structure shown [in Figure 3] can be configured in any desired manner."  *Id.*, 5:36-39.

6   From this table, Frank and his co-workers select category descriptions when labeling documents.

7   Frank keeps track of each document by ***creating a file information directory ("FID")*** along the

8   lines of Figure 4.  The FID is simply a listing of basic information about each document—"file name

9   [], file location [], file creation time" and category descriptions.  *See id.*, 4:44-45, 6:26-32.



FIG. 3

FIG. 4

17  The last column in Figure 4 uses numerical identifiers that correspond to particular category

18  descriptions; but, to match the asserted claims' requirement that the FID include the category

19  descriptions themselves, Frank would simply replace the last column with one that lists the actual

20  labels (MEMOS, etc.).  *See* '360 Pat., 9:38-41; Claims 1, 15, 20, 22.

21      Frank then searches the FID for documents by ***creating a search filter comprising a set of***

22  ***category descriptions***—in other words, creating a set of search terms from the category descriptions

23  (e.g., "MEMOS and JONES CASE").  Frank guarantees that his search will find at least one

24  document.  He can give this assurance because he "disables"—crosses off— "those categories whose

25  identifiers are not used with any files" from the list used to select categories for a search.  *See id.*,

26  12:32-36.  When a team member asks to search for more than one category description, Frank uses a

27  recursive process identical to the example described in the '360 patent.  Specifically, after searching

28  the FID for documents labeled with the first category description, Frank makes a "determination []

4

1  as to which other categories are also used on those files." *See id.*, 12:32-40. "These other categories

2  remain enabled for further selection," but Frank "disable[s]" all other category descriptions by

3  crossing them off the list. *See id.*, 12:40-42; *see also id.* 12:43-13:3. Frank repeats the process until

4  an appropriate set of category descriptions is defined, or all unselected category descriptions are

5  disabled. *See id.*, 12:43-13:12. This process may be too time consuming; if so, Frank's co-workers

6  can give him a conditional set of terms—e.g., "'MEMOS and PERHAPS JONES'"—so that if

7  MEMOS matches a document, but the addition of JONES matches none, then JONES is excluded.

8  *See id.*, 13:13-24. After completing his search, Frank provides a list of the matching documents

9  (which the specification calls a "hybrid" folder of sorts), and can also locate and return documents

10  on the list. *See id.*, 14:35-40; 4:15-20.

11       The specification adds no technological heft to this human method of file organization and

12  access. It announces no new hardware. Any generic computer will do. Nor does the patent claim to

13  have invented a computer's standard use of tables, directories, and search functionality. One would

14  expect, then, that the specification discloses some new particular *way* of using an ordinary

15  computer—perhaps some new programming, system logic, or software. But it doesn't. Indeed,

16  SpeedTrack is unequivocal that *any* computer technology will suffice. The specification cautions

17  that the "preferred embodiment and examples" described in the specification "should be considered

18  as exemplars, rather than as limitations on the present invention." *Id.*, 4:55-57. And yet even these

19  "exemplars" hardly suggest innovation. The filing method is preferably implemented with "a

20  windows-based graphical user interface" such as the Macintosh System 7 from Apple Computer or

21  Microsoft Windows—"such interfaces," the specification acknowledges, "are common." *Id.*, 7:20-

22  25. To "activate[]" the "invention" on an interface, one uses "methods known in the art…such as by

23  using a computer mouse to 'click' on an icon." *Id.*, 7:26-32. Following activation, "any desired

24  display…can be used" to display category descriptions to the user, who in turn selects the category

25  descriptions by, for example, "pointing a computer mouse and 'clicking' on each category

26  description to be applied to the file." *Id.*, 8:29-30, 8:61-64. As for storing the category descriptions

27  and entries in the FID, the patent gives examples—non-limiting, of course—of various data

28  structures. *Id.*, 5:40-6:15, 6:50-7:19. SpeedTrack does not claim to have invented such familiar

5

ways of organizing data—the specification is candid that these are "basic data structures" and are initialized "in known fashion." *Id.*, 7:38-42.  And to search the FID, a user "selects the pre-defined category description for the files which the user wants to find," by, for example, the customary act of "click[ing] the mouse on each applicable category description." *Id.*, 10:43-46.  As for the search itself—the highlight of SpeedTrack's alleged invention—"[a]ny search technique may be used." *Id.*, 10:61.

### 2.   The Claims

The asserted claims are likewise agnostic about any particular technology.  They recite only the same generic steps of creating a generic table and a generic directory with various attributes (tools that humans, like Frank, have used for centuries to organize information) and creating a search filter that guarantees one result (does not matter how), along with a generic computer.  Claim 1, for example, recites:

> 1. A method for accessing files in a ***data storage system of a computer system*** having means for reading and writing data from the data storage system, displaying information, and accepting user input, the method comprising the steps of:
>
> Initially ***creating in the computer system a category description table*** containing a plurality of category descriptions, each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other;
>
> Thereafter ***creating in the computer system a file information directory*** comprising at least one entry corresponding to a file on the data storage system, each entry comprising at least a unique file identifier for the corresponding file, and a set of category descriptions selected from the category description table; and
>
> Thereafter ***creating in the computer system a search filter comprising a set of category descriptions***, wherein for each category description in the search filter there is guaranteed to be at least one entry in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter.

'360 Pat., Cl. 1 (emphasis added).[2]  SpeedTrack claims no more than remedying a longstanding

---

[2] The other asserted independent claims are "substantially similar" and "linked to the same abstract idea."  *See Content Extraction and Transmission LLC v. Wells Fargo Bank et al.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).  **Claim 22** adds only that category descriptions are "logically combined in the search filter" by "choosing one category description at a time, in any order."  **Claim 20** has trivial variations—e.g., renaming a table a "list" and noting that the process concludes by "displaying the file names of all file records" matching the search filter.  **Claim 15** expresses the abstract idea of file organization and access largely with means clauses but without the recitation of a search filter.

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS AMENDED COMPLAINT

CASE NO. 09-CV-04479-JSW

annoyance with generic filing systems (of both the paper and computer sort) by reorganizing information on a generic computer, and according to a method that a human being could perform.

## C.     This Action

SpeedTrack filed this suit against the seventeen Defendants in 2009.  The case has been stayed pending two others filed on the same patent.  Both ended with the Federal Circuit affirming summary judgment of non-infringement granted by Chief Judge Hamilton (and before the *Alice* decision).

Here, in its third run on the patent, SpeedTrack accuses the Defendants' websites of infringement for "permit[ting] visitors" to "search for products available for sale[s] (i.e., search for files stored in a data storage system) by selecting pre-defined categories descriptive of the products." *See* Dkt. No. 143, ¶ 31.  The words "website" and "internet" appear nowhere in SpeedTrack's decades-old patent.  SpeedTrack plainly seeks to exploit the abstractness of its claims to tax the real innovations of others, which is precisely the sort of abuse that § 101 is intended to prevent.

## III.     THE ASSERTED CLAIMS VIOLATE THE RULE AGAINST CLAIMING AN ABSTRACT IDEA

### A.     § 101 Protects the Public from Patents Claiming Only Abstract Ideas

For over 150 years, § 101 has prohibited patentees from owning "building blocks of human ingenuity" that belong to no one—that is, laws of nature, natural phenomena, and abstract ideas. *Alice*, 134 S.Ct. at 2354.  Allowing "monopolization" of these building blocks would impede innovation more than it would promote it, "thereby thwarting the primary object of the patent laws." *Id*.  To determine whether a patent monopolizes a building block like an abstract idea, a "two-step" framework controls:  (1) determine whether the claims are directed to an abstract idea; and (2) if so, assess whether the claims include an inventive concept that transforms the claims into something "significantly more" than the ineligible subject matter.  *Id*., at 2355.

The asserted dependent claims are more of the same.  **Claims 2 and 11** merely note that the category description identifier (e.g., the preceding numeric designation in Figure 3) is "created by"—the generic—"computer system."  **Claim 7** says only that the search filter allows the user to select category descriptions(s) and disables those that would yield no results.  **Claims 11 and 21** state the obvious point that search results are displayed, and can be selected, located, and opened.

1    Scrutiny under § 101 is appropriate—and needed—on the pleadings to liberate courts from

2  the crush of poor-quality patents that seek to remove abstract ideas from the public domain.  Federal

3  Circuit Judge Mayer has "commend[ed]" district courts' "adherence to the Supreme Court's

4  instruction that patent eligibility is a 'threshold' issue'" by "resolving it at the first opportunity."

5  *OIP Tech., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1365 (Fed. Cir. 2015) (Mayer, J., concurring).

6  Here, the parties have agreed that there is no reason to delay resolving this threshold issue.  The

7  claims were largely construed in prior litigation—constructions affirmed by the Federal Circuit.

8  *SpeedTrack*, 524 F. Appx. at 652-3.  And this Court may consider any additional constructions

9  offered by SpeedTrack for purposes of this motion.  *See Content Extraction and Transmission LLC*,

10  776 F.3d at 1349.  No construction, however, can alter what is undeniable on the pleadings: the '360

11  patent seeks to remove a naked idea from the public domain without any technical contribution to

12  the public store of knowledge.

13    **B.    The '360 Patent Claims an Abstract Idea of File Organization and Access**

14    SpeedTrack's patent is directed to an abstract idea of file organization and access—labeling

15  documents with, and searching those documents based on, the same non-hierarchical descriptive

16  labels in order to guarantee at least one result.  File organization and access is not only "inarguably a

17  building-block of the modern 'information age,'" but a concept of "time immemorial."  *See Market*

18  *Track LLC v. Efficient Collaborative Retail Marketing, LLC*, Case No. 11-cv-4957, 2015 WL

19  3637740, at *6 (N.D. Ill. Jun. 12, 2015) (invalidating patent claiming abstract idea of "identification,

20  organization, and presentation of stored information").  For centuries, human beings have relied on

21  filing systems to organize and access information—the Great Library of Alexandria in the third

22  century B.C., the only library to survive antiquity at the Villa of the Papryi, and, more recently, as

23  the '360 patent notes, the filing cabinet, which legend says earned a gold medal at the 1893 World's

24  Fair.  File organization and access by descriptive labels is a fundamental idea that belongs to the

25  public, not SpeedTrack.

26    Indeed, "many courts addressing patents involving accessing and/or organizing data have

27  concluded that these types of patents are directed at abstract ideas."  *Datatrak Int'l, Inc. v. Medidata*

28  *Solutions, Inc*., Case No. 1:11-cv-458, 2015 WL 6870109, at *3 (N.D. Ohio Nov. 6, 2015).  In *TLI*

8

1   *Commc'ns*, for example, the Federal Circuit held last month that the idea of recording a digital

2   image, communicating it to a storage device, and administering the image was unpatentable.  *TLI*

3   *Commc'ns*, 2016 U.S. App. LEXIS 8970, at *3-5.  The patent did not solve a technology-centric

4   problem.  *Id.*, at *9-10.  Its goal—the same goal of SpeedTrack's patent—was to remedy

5   organization and access headaches accompanying large volumes of information, and specifically

6   "the problems of locating the data of an image data file [which] increase as the number of images to

7   be archived increases."  *Id.*, at *3.  This challenge was not particular to computing.  *See id.*, at *3-4,

8   *11-12.  Neither was the patent's purported solution of labeling the images with classification data

9   (e.g., date or timestamp).  *Id.*, at *4.  There was no new telephone, server, or combination of the two,

10  nor any meaningful nod to solving technological problems like *how* to append labels to the image

11  files.  *Id.*, at *9-10.  Making matters worse, the claims were silent about "any technical details"; the

12  patent, instead, "predominately describes the system and methods in purely functional terms."  *Id.*, at

13  *10.  Empty of a technological advance, the patent's notion of using labels for "storing digital

14  images in an organized manner" was a "well-established 'basic concept' [that] fall[s] under *Alice*

15  …."  *Id.*, at *13.

16        Federal Circuit Judge Bryson reached the same conclusion in *Preservation Wellness*—that is,

17  the "'concept of record access and management' is an abstract idea."  *Preservation Wellness Tech. v.*

18  *Allscripts Healthcare Solutions*, Case No. 2:15-cv-1559-WCB, 2016 WL 2742379, at *7 (E.D. Tex.

19  May 10, 2016) (Bryson, W., by designation).  And thus, a system for tiered access to patient records

20  was "very much in the mainstream of methods and systems for organizing human activity that have

21  been held to constitute 'abstract ideas.'"  *Id.*  Tiered access was commonplace in medicine long

22  before computers.  *Id.*  The patent's "introduction of computers" did not "render the otherwise

23  abstract idea any less abstract."  *Id.*  The recited computer was just window dressing.  Its description

24  in the system claims was "almost entirely functional in nature," expounding *what* the computer *had*

25  *the capacity* to do—store records, allow access to records for reading and editing, allow tiered

26  access—but agnostic about *how* the computer did so.  *Id.*, at *8.  "The idea at the heart" of the

27  patent, then, was "simply the performance of [a] function" to allow tiered access to medical records,

28  and "not a technological solution that enables that function to be performed in a particular manner."

9

1    *Id.*

2          That file organization is an abstract idea is squarely consistent with the Federal Circuit's

3    recent decision in *Enfish*.  The *Enfish* decision (which, like *TLI Commc'ns*, was authored by Federal

4    Circuit Judge Hughes) held that a patent met the threshold of § 101 because it was not directed to the

5    bare concept "of organizing information."  *Enfish,* 2016 U.S. App. LEXIS 8699, at *15.  Nor did it

6    just "recite[] generalized steps to be performed on a computer using conventional computer

7    activity," like the patent at issue in *Internet Patents*.  *Id.*, at *20, citing *Internet Patents Corp. v*

8    *Active Network, Inc.*, 790 F.3d 1343, 1348-9 (Fed. Cir. 2015) (invaliding claims directed to

9    maintaining computer state without reciting specific activity to generate that result).  Instead, it

10   contributed a specific four-part algorithm for "implementation" of a specific *way* of achieving a

11   computing result—namely, a database that operated faster and used less computing memory.  *Id.*, at

12   *13-14, *21; *see also DDR Holdings, LLC v. Hotels.com, LP,* 773 F.3d 1245, 1257-8 (Fed. Cir.

13   2014) (patent was "rooted in computer technology in order to overcome a problem specifically

14   arising in the realm of computer networks" and "specif[ied] *how* interactions with the Internet are

15   manipulated to yield a desired result—a result that overrides the routine and conventional ….")

16   (emphasis added); *Klaustech, Inc. v. AdMob, Inc.*, Case No. 10-05899 JSW, 2015 WL 10791915, at

17   *3 (N.D. Cal. Aug. 31, 2015) (patent claiming "centrally-located, non-scrolling advertisement

18   display frame on an Internet browser" patent eligible because it "addresses a technological

19   improvement specific to Internet-related advertising...employs a new approach to control and

20   monitor the display of advertisement[s] on Internet browsers and seeks to solve technical problems

21   that do not exist in the conventional advertising realm.").

22         These cases, and countless others, leave no room for doubt: SpeedTrack's patent claims only

23   an abstract idea.[3]  The '360 patent is yet another iteration of the abstract idea of file access and

---

24   [3] In accord with the Federal Circuit, Judges in the Northern District of California have

25   likewise concluded that file organization and access patents do not measure up to eligible subject
     matter.  *See Bascom*, 77 F. Supp. 3d at 949 (method for creating relationships between documents on

26   a network, assigning attributes to those relationships, and creating link directories to store the
     relationships separately from the document objects was the "'common, age-old' practice" of

27   "establishing and using relationships between documents"); *Cogent Medicine, Inc. v. Elsevier, Inc.*,

28   70 F. Supp. 3d 1058, 1064 (N.D. Cal. 2014) (database that automatically updated folders of medical

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS AMENDED COMPLAINT                                    CASE NO. 09-CV-04479-JSW

organization.  SpeedTrack will protest that it implements its file organization and access idea on a computer.  But this idea is not particular to, and long predates, modern computing.  The Court need consult only SpeedTrack's patent on this point:  It is directed to methods and systems "for accessing files"—which "emulate[] commonly-used paper filing systems"—and hopes to resolve a problem— "the same problem [that] arises in paper filing systems"—of being bound to choose one folder when a file may logically belong to multiple.  '360 Pat., 1:29-30, 2:2-20; *id.*, Cl. 1, 15, 20, 22.  To be sure, this frustration arises out of a longstanding problem of all file systems; but it is not a problem unique to computing, and in turn, not sufficient to confer eligibility.  *See TLI Commc'ns*, 2016 U.S. App. Lexis 8970, at *12 (remedying problems with managing large volumes of image data was not an "attempt to solve 'a challenge particular to the Internet'"); *Datatrak*, 2015 WL 6870109, at *6 (patent addressing "common problems generally associated with large amounts of data, not computer networks"); *cf. DDR,* 773 F.3d at 1256-7 (patent eligible because it addressed "a challenge particular to the Internet").

  The '360 patent's solution simply eliminates folders, and uses non-hierarchical descriptive labels instead.  That solution has nothing to do with technology.  The claims call for a computer, of course, but the recited computer is just an afterthought.  It is a typical computer with its usual components (memory, display and user input device).  The components "behav[e] exactly as expected," performing the routine steps of creating a table, directory and search filter.  *See TLI Commc'ns*, 2016 U.S. App. Lexis 8970, at *18; '360 Pat., Cl. 1, 15, 20, 22.  The patent is unconcerned with any new hardware, software, or other specific programming to actually accomplish those steps, and fails to provide even the pretense of a technology-oriented solution.  To the contrary, the patent recites only a list of aspirations and naked functions, e.g.—"creat[e] category description table," "creat[e] a file information directory," "creat[e] a search filter" and operate with

---

information was no more than "a computerized method of [the doctor's assistant] performing the same task."  *Id.*  So, too, have District Courts around the country.  *See MyMedicalRecords, Inc. v. Walgreen Co.*, Case No. 2:13-cv-00631-ODW (SHx), 2014 WL 7339201, at *3 (C.D. Cal. Dec. 23, 2014) ("[R]ecord access and management… [is] an age-old idea …[and] an abstract idea."); *Collarity, Inc. v. Google, Inc.*, Case No. 11-1103-MPT, 2015 WL 7597413, at *9 (D. Del. Nov. 25, 2015) (claim not rooted in technology because "refining a search query is a problem humans have long dealt with….").

1    means for "associating" files with category descriptions, "adding" category descriptions to a list of

2    descriptions, and "linking" category descriptions.  '360 Pat., Cl. 1, 15, 20, 22.  SpeedTrack will

3    argue that these functions are recited in the specification; the specification, however, "limits its

4    discussion" to "abstract functional descriptions" that are "devoid of technical explanation as to how

5    to implement the invention."  *See TLI Commc'ns*, 2016 U.S. App. Lexis 8970, at *17-18; Section

6    II(B)(2).  Such "vague, functional" descriptions are not enough to turn an abstract idea into an

7    invention.  *Id.*, at *18.  Over and again, Courts have held that technologically agnostic patents—like

8    SpeedTrack's here—constitute an abstract idea, not an inventive solution.  *See, e.g., id.*, at *10

9    (patent "fail[ed] to provide any technical details"); *Internet Patents*, 790 F. 3d at 1348-49 (patent

10   directed to abstract idea of maintaining state without recitation of specific activity to generate result);

11   *Bascom*, 77 F. Supp. 3d at 953 (patent nothing "beyond generic and conventional computer

12   structures and unspecified software programming").

13         SpeedTrack's attempt to monopolize an abstract idea is all the more undeserving because it

14   merely "patent[s] the use of human intelligence." *See CyberSource Corp. v. Retail Decisions, Inc.*,

15   654 F.3d 1366, 1373 (Fed. Cir. 2011) (internal quotations omitted); *Bascom*, 77 F. Supp. 3d at 950.

16   A resourceful file clerk (like Frank) can create a table of category descriptions, a directory of files

17   and their associated descriptions, and a search filter to find documents labeled with particular

18   category descriptions—with the guarantee that he will find at least one result, rather than "wast[e]

19   time searching for data that cannot be matched."  '360 Pat., 4:8-9.  Such methods, "which can be

20   performed mentally, or which are the equivalent of human mental work, are unpatentable abstract

21   ideas…."  *CyberSource,* 654 F.3d at 1371.

22         The '360 patent is, at best, an alternative method of document organization, not an advance

23   in computing.  It is no less abstract than "classifying and storing digital images in an organized

24   manner" (*TLI Commc'ns*, 2016 U.S. App. LEXIS 8970, at *7), "maintaining patient records [in a

25   way] that permits tiered access" (*Preservation Wellness,* 2016 WL 2742379, at *7), "creating,

26   storing and using relationships between objects" (*Bascom,* 77 F. Supp. 3d at 949), and "maintaining

27   and searching a library of information" (*Cogent,* 70 F. Supp. 3d at 1063).  Like the catalogue of so

28   many other file organization and access patents, the '360 patent is directed to "doing something *on*"

12

a computer, and not "doing something *to*" a computer."  *See Preservation Wellness*, 2016 WL

2742379, at *12 (W. Bryson, by designation) (emphasis added).  Thus, whether documents are

organized and accessed on a computer (as in '360 patent) or in a filing cabinet (as they have been for

centuries), there is no technological advance—just another abstract idea of document organization

and access.

**C.**    **The '360 Patent Adds Nothing Inventive to the Abstract Idea**

The abstract claims are patent eligible only if they include "significantly more"— i.e.,

"additional elements" that "transform the nature of the claim" into a "patent-eligible application" of

the abstract idea of organizing and searching for files based on labels, rather than file folders, to

guarantee a result.  *See Alice*, 134 S.Ct. at 2355.  They do not.

The computer setting cannot provide the inventive concept.  The only hardware is a generic

"data storage system" of a generic "computer system"— previously construed as a "computer

system, embodied in either a single computer or a distributed environment, having a hard disk drive,

a computer display, and a computer mouse, and equivalents thereto."  Dkt. No. 143, ¶ 25.  These are

all conventional and generic components that do not meet the demands of § 101.  *See Alice,* 134

S.Ct. at 2359-60 ("a generic computer [] perform[ing] generic computer functions" and "data storage

unit'" are conventional); *Tuxis Technologies, LLC v. Amazon.com, Inc.*, Case No. 13–1771–RGA,

2015 WL 1387815, at *4  (D. Del. Mar. 25, 2015) ("displaying an image over the Internet is a basic

computer function"); *CyberSource*, 654 F.3d at 1372 ("steps []to obtain information such as

"entering a query via a keyboard" and "clicking a mouse" "cannot alone confer patentabilty").[4]

---

[4] The remaining constructions confirm that the patent claims nothing beyond generic and
extant technology.  Dkt. No. 143, ¶ 26. **Category Description Table (or List)**: "at least one list or
array, configured in any desired manner, or taking any form, containing a plurality of category
descriptions."  **Category Description**: information that includes a name that is descriptive of
something about a stored file.  **File Information Directory**: "a directory comprising information
corresponding to at least one file."  **Having No Predefined Hierarchical Relationship**: "[T]he
category descriptions have no predefined hierarchical relationship.  A hierarchical relationship is a
relationship that pertains to a hierarchy.  A hierarchy is a structure in which components are ranked
into levels of subordination; each component has zero, one, or more subordinates; and no
component has more than one superordinate component." **Search Filter**: "a set of one or more
category descriptions (depending upon the context of claim 1 or claim 20) and at least one logical
operator if there is more than one category description in the search filter that is used to search."

The generic components also perform only generic functions. The patent calls for "generalized steps to be performed on a computer using conventional computer activity." *See Enfish,* 2016 U.S. App. LEXIS 8699, at *20 (citing *Internet Patents,* 790 F. 3d at 1348-50).  There is nothing even arguably inventive about labeling files with category descriptions, or creating a table and directory to record that labeling.  Nor is there anything arguably inventive about creating tables and directories to store information.  The patent is candid that these are merely "basic data structures" that are initialized "in known fashion." '360 Pat., 7:38-42.  Indeed, computers regularly use tables and directories to organize information—just as humans have for centuries—and for that reason, such basic tools are not inventive.  *See, e.g., Datatrak,* 2015 WL 6870109, at *5 ("The use of tables and indexes to sort data for retrieval are longstanding principles that have been in use for ages and can be done by a human"); *Shortridge v. Foundation Construction Payroll Service, LLC, et al.,* Case No. 14-cv-04850-JCS, 2015 WL 1739256, at *12 (N.D. Cal. Apr. 14, 2015) ("[a]s a method of organizing data on a computer, relational databases are 'well-understood, routine, [and]conventional…").  Instead, this sort of "electronic recordkeeping" is "one of the most basic functions of a computer."  *Alice,* 134 S.Ct. at 2359.  So, too, is searching for a file on a computer. "[C]ourts have," in fact, "repeatedly held that finding information using a computer is an abstract idea."  *In re West View Research LLC,* Case No. 14-cv-2675-CAB, 2015 WL 9685577, at *6 (S.D. Cal. Dec. 10, 2015) (citing *Content Extraction,* 76 F.3d at 1343).  Thus, the claimed step of (somehow, anyhow) creating a search filter with a guarantee of at least one result—the same guarantee that our file clerk can make—does not imbue the claims with an inventive concept, either.

Any argument that a computer "speeds up" these steps vis-à-vis a file clerk would make no difference.  "[R]elying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible." *OIP,* 788 F.3d  at 1363.  Courts have thus found that patents carried no inventive weight even when the computer was fast enough to be "simultaneous," or the patent represented the first automation of a method.  *See Alice,* 134 S.Ct. at 2359; *Cogent,* 70

---

**User:** "one that uses – may be a person or another computer."  **Creating in the computer system**: "producing in the computer system."  **File**: "any collection of data or information stored on a computer system."

F. Supp. 3d at 1064-5.  Using a computer to do human tasks more quickly is not an invention.

If there was something inventive about the way that the patent creates the table, directory, or search filter—something beyond "vague, functional descriptions" of a computer "behav[ing] exactly as expected"—SpeedTrack never says what that something *is*.  *See TLI Commc'ns*, 2016 U.S. App. LEXIS 8970, at *18.  The claims insist only that an ordinary computer perform conventional functions that result in a table, directory and search filter with various attributes; the claims are entirely indifferent about *how*.  There is no specific guidance, or even preference, for any additional, specific technology that one could or should use to implement SpeedTrack's idea for file organization and access.  *See id.* (no inventive concept where patent is "devoid of technical explanation as to how to implement the invention").  The patent is clear that *any* will do. '360 Pat., 4:55-57 ("preferred embodiment and examples should be considered as exemplars, rather than as limitations on the present invention"); *id.*, 10:61 ("[a]ny search technique may be used"); *id.*, 8:29-30 ("any desired display…can be used").

SpeedTrack refuses to confine its abstract idea of organizing and searching for files based on labels to any inventive concept, and in turn, seeks to "monopolize any and every technical implementation of [a] basic process," while leaving it for others to create (i.e., invent) a way to put the method and system to use.  *See Market Track,* 2015 WL 3637740, at *9.  Nothing could be more hostile to the purpose of our patent laws.  Indeed, our patent laws forbid owning *every way* to achieve a result.  A patentee may own only its *particular way*.  SpeedTrack cannot clear the hurdle of § 101 with "no restriction on how the result"—tables, labeled files, a directory, and a search filter yielding at least one result—"is accomplished."  *Internet Patents*, 790 F.3d at 1348.

## IV.  CONCLUSION

Applying an unbroken chain of decisions from the Supreme Court, Federal Circuit, and this district, "it is a straightforward matter to conclude that the claims in this case are invalid."  *buySAFE, Inc. v. Google*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).  Defendants respectfully request that the Court dismiss SpeedTrack's amended complaint because the '360 patent claims unpatentable subject matter under § 101.

1   DATED:  June 15, 2016              SIDLEY AUSTIN LLP

2

3                                      By_____/s/ Michael J. Bettinger_____
                                           Michael J. Bettinger

4                                      Attorneys for Defendants
                                       Amazon.com, Inc. and Retail Convergence, Inc.,
5                                      dba, Smartbargains.com

6

7   DATED:  June 15, 2016              STRIS & MAHER LLP

8

9                                      By_____/s/ Elizabeth Rogers Brannen_____
                                       Elizabeth Rogers Brannen

10                                     Attorneys for BarnesAndNoble.com, LLC and
                                       BarnesAndNoble.com, Inc.
11

12

    DATED:  June 15, 2016              FARELLA BRAUN + MARTELL LLP
13

14                                     By_____/s/ Roderick M. Thompson_____
                                           Roderick M. Thompson
15

16                                     Attorneys for Defendant
                                       Dell Inc.
17

18  DATED:  June 15, 2016              SIDLEY AUSTIN LLP

19

20                                     By_____/s/ Bryan Anderson_____
                                           Bryan Anderson

21                                     Attorneys for Defendants
                                       Best Buy Co. and Best Buy.com, LLC
22

23

    DATED:  June 15, 2016              GREENBERG TRAURIG
24

25                                     By_____/s/ Barry J. Schindler_____
                                           Barry J. Schindler
26

27                                     Attorneys for Defendant
                                       Systemax, Inc.
28

1  DATED:  June 15, 2016                    ARNOLD & PORTER LLP

2

3                                           By_____/s/ Michael A. Berta_____
                                               Michael A. Berta

4                                           Attorneys for Defendants
                                            Officemax, Inc., Macys.Inc., Macys.com, Inc.,
5                                           dba Macys.com, LLC, Overstock.com, Inc.,
                                            Recreational Equipment, Inc., Valuevision
6                                           International, dba Evine Live, Inc., formerly dba
                                            ShopNBC.com, and B&H Foto & Electronics
7                                           Corp.

8  DATED:  June 15, 2016                    NORTON ROSE FULBRIGHT US LLP

9

10                                          By_____/s/ John A. O'Malley_____
                                               John A. O'Malley

11

12                                          Attorneys for Defendant
                                            Hewlett-Packard Company

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

ATTESTATION

2    Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the filing

3    of this document has been obtained from the other signatories above.

4

5    DATED:  June 15, 2016                              SIDLEY AUSTIN LLP

6

7                                                       By_____/s/ Michael J. Bettinger_____
                                                           Michael J. Bettinger

8                                                       Attorneys for Defendants
                                                        Amazon.com, Inc. and Retail Convergence, Inc.,
9                                                       dba, Smartbargains.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28