UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPEEDTRACK, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC.; BARNES & NOBLE BOOKSELLERS, INC.; J & R ELECTRONICS, INC.; DELL, INC.; BEST BUY CO.; BESTBUY.COM, LLC; SYSTEMAX, INC.; NA TECH DIRECT, INC.; POCAHONTAS CORP.; SYX NORTH AMERICAN TECH HOLDINGS LLC; NA TECH COMPUTER SUPPLIES INC.; OFFICEMAX, INC.; MACY'S, INC.; MACYS.COM, LLC; OVERSTOCK.COM, INC.; RECREATIONAL EQUIPMENT, INC.; EVINE LIVE, INC.; B&H FOTO & ELECTRONICS CORP.; HEWLETT-PACKARD CO.; RETAIL CONVERGENCE.COM, LP DBA SMARTBARGAINS.COM, <br><br> Defendants. | Case No. 09-cv-04479-JSW <br><br> **ORDER GRANTING IN PART AND DENYING IN PART SPEEDTRACK'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 268 |

Now before the Court is the motion filed by plaintiff SpeedTrack, Inc. ("SpeedTrack" or "Plaintiff") for partial summary judgment. SpeedTrack contends it is not precluded by collateral estoppel or prosecution history estoppel from asserting its infringement claims. Having considered the parties' papers, relevant legal authority, and the record in this case, the Court HEREBY GRANTS IN PART and DENIES IN PART SpeedTrack's motion.

**BACKGROUND**

On September 23, 2009, SpeedTrack brought this action for infringement of U.S. Patent No. 5,544,360 ("the '360 Patent"). SpeedTrack's Second Amended Complaint, filed November 1,

2017, asserts claims against: Amazon.com, Inc.; Barnes & Noble Booksellers, Inc.[1]; J & R Electronics, Inc.; Dell Inc.; Best Buy Co.; BestBuy.com, LLC; Systemax, Inc.; Officemax, Inc.; Macy's, Inc.; Macys.com, LLC[2]; Overstock.com, Inc.; Recreational Equipment, Inc.; EVINE Live, Inc.[3]; B&H Foto & Electronics Corp.; Hewlett-Packard Co.; Retail Convergence.com, LP dba Smartbargains.com[4]; and Systemax, Inc. subsidiaries, NA Tech Direct, Inc.; Pocahontas Corp.; SYX North American Tech. Holdings LLC; and NA Tech Computer Supplies Inc. (collectively "Defendants"). (*See* Dkt. Nos. 280, 283, Stipulation and Second Amended Complaint.)

The '360 Patent is directed at the problem in prior art data storage systems in which user search terms, possibly mistyped or misspelled, could fail to yield results. SpeedTrack has asserted infringement of three independent claims—two method claims (Claims 1 and 20) and one system claim (Claim 15)—arising from Defendants' Internet retail websites. In general, the claims require three components: (1) a "category description table," (2) a "file information directory," and (3) a "search filter." (*See* '360 Patent, Claims 1, 20.) The "category description table" contains "category descriptions," each comprising a "descriptive name," and having "no hierarchical relationship with such list or each other." (*See id.*, Claim 1.) The "file information directory" comprises entries corresponding to stored files, where each entry has "a unique file identifier for the corresponding file, and a set of category descriptions selected from the category descriptions table." (*See id.*) Finally, the "search filter" allows the user to access the stored files with a set category descriptions, wherein each set is guaranteed to have at least one matching entry in the file information directory. (*See id.*) In other words, the claimed invention is a method and

---

[1] The original named defendants, Barnesandnoble.com, LLC and Barnesandnoble.com, Inc., were corrected to Barnes & Noble Booksellers, Inc. (*See* Dkt. No. 237.)

[2] The original named defendant, Macys.com, Inc., was corrected to Macys.com, LLC. (*See* Dkt. No. 236.)

[3] The original named defendant, Value Vision International, Inc. dba ShopNBC.com, was corrected to EVINE Live, Inc. (*See* Dkt. No. 235.)

[4] The original named defendant, Retail Convergence, Inc. was corrected to Retail Convergence.com, LP. (*See* Dkt. No. 249.)

1  system for accessing stored files, in which the user can only search for terms (*i.e.*, category
2  descriptions) that have been associated with existing files (*i.e.*, entries in the file information
3  directory). (*See id.*)

SpeedTrack now moves for partial summary judgment on two affirmative defenses: collateral estoppel and prosecution history estoppel. The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

### A. Legal Standard.

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate

3

burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995). It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Id.*; *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

## B. The Court Grants in Part and Denies in Part the Motion with Respect to Collateral Estoppel.

SpeedTrack argues that it is not precluded by collateral estoppel from asserting infringement, literally or under the doctrine of equivalents. Regional circuit law governs general collateral estoppel principles. *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013). The Ninth Circuit's prerequisites for offensive non-mutual collateral estoppel are whether:

> (1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior action.

*Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 n.8 (9th Cir. 2007) (quoting *Syverson v. IBM*, 472 F.3d 1072, 1078 (9th Cir. 2007)).

### 1. The Prior Law Suits.

SpeedTrack asserted the '360 Patent in two prior suits against different defendants. In the first action, SpeedTrack sued Walmart.com USA, LLC ("Walmart") for infringement based on Walmart's retail website. *SpeedTrack, Inc. v. Wal-Mart Stores, Inc.*, 2008 U.S. Dist. LEXIS 120644 (N.D. Cal. June 19, 2008). Specifically, SpeedTrack alleged infringement of independent claims 1 and 20, and dependent claims 2–4, 7, 11–14, and 21, all of which are method claims. *Id.*

4

at *5. Endeca Technologies, Inc. ("Endeca") intervened as the company that had provided Walmart the software at issue. *Id.* at *3–4. Among other terms, the court construed "category description," as used in both independent claims 1 and 20, to mean "information that includes a name that is descriptive of something about a stored file." *Id.* at *46.

The parties later raised new arguments, which caused the court to request additional briefing on a revised construction of the term "category description." *SpeedTrack, Inc. v. Wal-Mart Stores, Inc.*, 2012 WL 581338, at *7 (N.D. Cal. Feb. 22, 2012). SpeedTrack argued that the term should to be construed to mean "information that is descriptive of something about a stored file," while defendants advocated for the original construction. *Id.* The core dispute was "whether 'category description,' as used in the claim language, requires 'information' that contains an alphabetic descriptive name, or whether it requires 'information' that may include an alphabetic descriptive name or numeric identifiers.'" *Id.* The court held that its earlier construction of "category description" was correct, and within that construction, a "name that is descriptive of something about a stored file" required a solely alphabetic name. *Id.* at *7–8. The parties did not dispute that Endeca's "file information directory" had only numerical identifiers, rather than alphabetic names. *Id.* at *10. Accordingly, the court granted summary judgment of non-infringement, because Endeca's system could not meet the "category description" limitation. *Id.*

The Federal Circuit affirmed the district court's grant of non-infringement, and its construction of "category description" as "information that includes a name that is descriptive of something about a stored file," where "'name,' as used in the claim language, requires 'information' that must include, but is not limited to, a description in alphabetic form." *SpeedTrack, Inc. v. Endeca Techs, Inc.*, 624 Fed. App'x 651, 656–57 (Fed. Cir. 2013).

In the second action, SpeedTrack sued a different set of defendants, all of whom used Endeca's system. *SpeedTrack, Inc. v. Office Depot, Inc.*, 2014 WL 1813292, at *1–2 (N.D. Cal. May 6, 2014). The court held that SpeedTrack's infringement claims under the doctrine of equivalents were not barred by collateral estoppel, because the issue was never actually litigated in *Wal-Mart*. *Id.* at *7. The court still granted defendants' motion for summary judgment, however, as it found SpeedTrack's infringement claims barred in part by res judicata, and in whole by the

5

*Kessler* doctrine. *Id.* at *9. The Federal Circuit affirmed solely on the basis of the *Kessler* doctrine. *SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317 (Fed. Cir. 2015).

**2. The Previously Asserted Claims (Claims 1, 2, 7, 11, 20, 21).**

**a. Literal Infringement.**

SpeedTrack argues that, as a matter of law, it is not barred by collateral estoppel under the Federal Circuit decision's in *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045 (Fed. Cir. 2014), because Defendants do not use Endeca's system that was at issue in the prior law suits.[5]

In *Brain Life*, the court addressed whether a first suit, brought by Brain Life's predecessor, MIDCO, collaterally estopped Brain Life from asserting infringement of the same patent in a second suit. MIDCO had previously asserted infringement based on three of Elekta's products. *Id.* at 1049–50. The method claims were dismissed prior to trial, but the system claims proceeded through trial and the jury found Elekta's products were infringing. *Id.* at 1050. The Federal Circuit, however, reversed the jury verdict, and the district court entered final judgment in favor of Elekta. *Id.* In the subsequent suit, Brain Life only asserted the method claims, based on new iterations of the same three products, plus a fourth product that Elekta had acquired after final judgment. *Id.* at 1049–51. Although Brain Life did not assert the system claims, the Federal Circuit addressed, in dicta, whether collateral estoppel would have applied. The court concluded that Brain Life was barred from asserting infringement based on new iterations of the three previously-litigated products, because the district court found the new iterations "not materially different" from the originals. *Id.* at 1055, 1058. In contrast, "[w]hile similarities between [the fourth product] and the products actually litigated may [have meant] that certain questions regarding infringement of the system claims effectively may [have been] foregone conclusions," the court found those claims were "not barred by [the court's] case law applying issue preclusion to previously challenged products which have not been materially altered." *Id*. at 1055.

Here, SpeedTrack argues that "*Brain Life* shows[] the similarities and differences between Defendants' systems and the Endeca system are irrelevant to the issue of collateral estoppel,"

---

[5] The parties do not dispute that Defendants use a different system. (Motion Ex. 14, July 21, 2017 Case Management Conference at 14:17–18.)

6

because Defendants' systems were never at issue in the prior litigations. (Motion at 8:14–22.) While the Federal Circuit did find Elekta's fourth product "was never at issue in the MIDCO litigation," it did not go so far as to state that *any* product not at issue in a prior litigation is immune to collateral estoppel. Rather, the court held that Elekta's fourth product was not barred by "case law applying issue preclusion to previously challenged products *which have not been materially altered.*" *Brain Life*, 746 F.3d at 1055 (emphasis added). Indeed, the court found collateral estoppel did apply to new versions of Elekta's older products, because the new versions were "*not materially different*" from those at issue in the MIDCO litigation. *Id.* at 1055, 1058. SpeedTrack advocates for an analysis that is independent of whether a product is "materially different" from those actually litigated. This Court is not persuaded that the holding in *Brain Life* warrants such a broad approach. Whether collateral estoppel applies to Defendants' non-Endeca systems depends, in part, on whether those systems are "materially different" from the Endeca system.

SpeedTrack's broad interpretation is also contrary to the Federal Circuit's related jurisprudence in claim preclusion and the *Kessler* doctrine. "For claim preclusion in a patent case, an accused infringer must show that the accused product or process in the second suit is 'essentially the same' as the accused product or process in the first suit. 'Colorable changes in an infringing device or changes unrelated to the limitations in the claim of the patent would not present a new cause of action.'" *Nystrom v. Trex Co.*, 580 F.3d 1281, 1285 (Fed. Cir. 2009) (quoting *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 480 (Fed. Cir. 1991)). Likewise, the *Kessler* doctrine precludes the same accusing party from re-asserting infringement against a new product that is "essentially the same" as a product that already prevailed on noninfringement. *See Brain Life*, 746 F.3d at 1057. Neither defense is limited to the exact product at issue in the prior litigation. Instead, both extend to other products that are "essentially the same" as those actually litigated. It follows that collateral estoppel should require a similar analysis; demanding the present accused product be "not *materially* different" from the previously accused product is analogous to demanding the products be "*essentially* the same." In contrast, SpeedTrack's

7

formulation would narrow the scope of collateral estoppel to products that are *exactly* the same as those actually litigated.

The Court rejects SpeedTrack's argument that *Brain Life* "shows[] the similarities and differences between Defendants' systems and the Endeca system are irrelevant to the issue of collateral estoppel." (*See* Motion at 8:14–22.) Therefore, SpeedTrack has failed to show the absence of a genuine issue of material fact with respect to whether "material differences" exist between Defendants' systems and the Endeca system. Accordingly, the Court DENIES the motion as it relates to collateral estoppel of the previously asserted '360 Patent claims under a literal infringement theory.

### b. The Doctrine of Equivalents.

SpeedTrack also argues that it is not collaterally estopped from bringing infringement claims under the doctrine of equivalents. In *Office Depot*, the court held on summary judgment that *Wal-Mart* did not prevent SpeedTrack from asserting claims under the doctrine of equivalents, because defendants were unable to show the claims were actually litigated. *See Office Depot*, 2014 WL 1813292, at *7.

> While SpeedTrack *could have* raised its theory of infringement under the doctrine of equivalents in *Wal-Mart* . . . , its lack of diligence in asserting that theory prevented it from *actually* raising the issue in *Wal-Mart*. Thus, the court finds that the issue of infringement under the doctrine of equivalents was not "actually litigated," and thus, collateral estoppel does not bar SpeedTrack's claims that defendants infringed the ['360 Patent] under the doctrine of equivalents.

*Id.* The Court is persuaded by the reasoning in *Office Depot*. In addition, although collateral estoppel did not apply, all of SpeedTrack's claims in *Office Depot* were barred by the *Kessler* doctrine. Therefore, neither *Wal-Mart* nor *Office Depot* afforded SpeedTrack a "full and fair opportunity to litigate" its doctrine of equivalents claims. *See Office Depot*, 2014 WL 1813292, at *7–9, *aff'd*, 791 F.3d at 1318 (addressing the *Kessler* doctrine only).

Accordingly, the Court GRANTS the motion as it relates to collateral estoppel of the previously asserted '360 Patent claims under a doctrine of equivalents theory.

### 3. Claim 15.

The prior law suits have no bearing on SpeedTrack's claims for infringement of Claim 15, which was not asserted in either the *Wal-Mart* or *Office Depot* actions. Claim 15 is an independent system claim, discrete from the method claims at issue in the prior actions. Accordingly, the Court GRANTS the motion as it relates to collateral estoppel of Claim 15.

### C. The Court Grants the Motion with Respect to Prosecution History Estoppel.

SpeedTrack also argues that prosecution history estoppel does not preclude assertions of infringement under the doctrine of equivalents. The equivalent at issue is the use of numeric identifiers that map to alphabetic descriptive names, in place of "category descriptions" that include alphabetic descriptive names.[6] (Motion at 9:18–20, 21:3–16.)

"A patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002). The patentee can overcome that presumption by showing the amendment "cannot reasonably be viewed as surrendering a particular equivalent." *Id.* at 740. Specifically, the patentee may show: (1) "[t]he equivalent [would] have been unforeseeable at the time of the [amendment]"; (2) "the rationale underlying the amendment [bore] no more than a tangential relation to the equivalent in question"; or (3) "there [was] some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question." *Id.* at 740–41.

SpeedTrack contends that prosecution history estoppel does not apply, because its narrowing amendments were merely tangential to the equivalent in question. "[W]hether the patentee has established a merely tangential reason for a narrowing amendment is for the court to determine from the prosecution history record without the introduction of additional evidence, except, when necessary, testimony from those skilled in the art as to the interpretation of the

---

[6] The parties agree that they are bound by the Federal Circuit's construction of "category descriptions" in *Endeca*. (Dkt. No. 277, Reply Br. at 5:1–8); *see also Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998) ("[W]e recognize the national *stare decisis* effect that this court's decisions on claim construction have."); *Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1354–55 (Fed. Cir. 2017) (finding the court's prior Federal Rule of Appellate Procedure 36 unpublished opinion binding for collateral estoppel purposes).

record." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367 (Fed. Cir. 2003). "[A]n amendment made to avoid prior art that contains the equivalent in question is not tangential." *Id.* at 1369.

### 1. The Prosecution History.

The relevant prosecution history includes three sets of office actions and responses. The patent examiner issued a First Office Action to reject Claim 4 (final Claim 20) as anticipated by U.S. Patent No. 5,046,918 (Motion Ex. 3, "Schwartz"), Claim 27 (final Claim 15) as anticipated by *Thought Pattern Handbook* (*Id.* Ex. 6), and Claim 7 (final Claim 1) as obvious over Schwartz in view of U.S. Patent No. 5,206,949 (*Id.* Ex. 4, "Cochran"). (*See id.* Ex. 5 at 4–5, 7–8.) In response, the inventors ("Inventors") amended Claim 4 (20) to state that "category descriptions" are "pre-defined," Claim 7 (1) to state that the search result was "guaranteed," and Claim 27 (15) to add "category addition means" and "category linking means." (*See id.* Ex. 6 at 4, 6, 11.)

The patent examiner then issued a Second Office Action to again reject Claim 27 (15) as anticipated by *Thought Pattern Handbook*, as well as Claim 4 (20) as obvious over Schwartz in view of *Thought Pattern Handbook*, and Claim 7 (1) as obvious over Schwartz in view of Cochran. (*See id.* Ex. 7 at 7–9.) In response, Inventors amended all three claims to state "category descriptions" instead of "categories," and to add "a plurality of category descriptions, each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other." (*See id.* Ex. 8 at 5–6, 11.)

The patent examiner then issued a Third Office Action that again rejected Claim 27 (15) as anticipated by *Thought Pattern Handbook*, Claim 4 (20) as obvious over *Thought Pattern Handbook* in view of Schwartz, and Claim 7 (1) as obvious over *Thought Pattern Handbook* in view of Schwartz and in further view of Cochran. (*See id.* Ex. 9 at 4, 8, 10–11.) In response, Inventors amended Claims 4 (2) and 7 (1) to specify that the first step occurs "initially" and the second step occurs "thereafter," and to add limitations regarding the display of certain category descriptions during the search steps. (*See id.* Ex. 10 at 2–3.) The patent examiner subsequently issued a Notice of Allowability. (*See id.* Ex. 11.)

Here, the parties focus on the amendments made in response to the Second Office Action, specifically regarding Schwartz and Cochran.[7] The dispute boils down to whether the change from "category" to "category description," with "each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other," can reasonably be understood as disclaiming the equivalent in question—numerical identifiers that map to alphabetic descriptors.

### 2. The Rationale Underlying the Amendments.

SpeedTrack argues that the purpose of the amendments regarding category descriptions was to distinguish the patented invention from the "hierarchical" systems disclosed by the prior art. In response to the Second Office Action, Inventors described Schwartz and Cochran as "simply a variation of conventional hierarchical file systems, in which fields/attributes are defined in a first step, and values associated with data files are entered into such fields/attributes in a second step." (*Id.* Ex. 8 at 14, 16.) Inventors used the following example of a file information directory to illustrate a hierarchical system:

| | | | Field = "Language" | |
|---|---|---|---|---|
| Record #1 | FileID #1 | {Location} | English | [other values ...] |
| Record #2 | FileID #2 | {Location} | French | [other values ...] |

(*Id.* Ex. 8 at 15.) The user first creates an "attribute"—which Inventors refer to as a "field"—that is not descriptive of a particular file. (*See* Motion Ex. 8 at 15; Schwartz at 4:16–43.) In their example, Inventors created a "Language" field/attribute, adding a virtual "Language" bucket to each file in the system. (*See* Motion Ex. 8 at 15.) The user is then able to fill each field/attribute bucket with multiple "values." Here, Inventors added "English" to FileID #1 and "French" to FileID #2. (*See id.*) Because the values are placed into specific field/attribute buckets, they are inherently associated with that field/attribute. As Inventors explained, "the term 'French' MUST refer to language, and not to any other characteristic of the file (such as food type, culture, travel, etc.)" (*See id.*)

---

[7] Inventors distinguish *Thought Pattern Handbook* on separate grounds, unrelated to the meaning of "category description." (*See* Motion Ex. 8 at 17, Ex. 10 at 9–10.)

11

Inventors used an analogous example to distinguish their claimed invention from Schwartz and Cochran's hierarchical systems:

| | | Category Descriptions |
|---|---|---|
| FileID #1 | {Location} | English, Language, Letter, [ $N$ other values ...] |
| FileID #2 | {Location} | French, Bread, [ $M$ other values ...] |

(*Id.*) Rather than a two-layered structure in which the user first creates field/attributes, then fills those field/attributes with values, the claimed invention consists of a single layer of "category descriptions." (*See id.* ("The invention is essentially 'fieldless.'").) Here, Inventors created several category descriptions—"English," "Language," "Letter," "French," and "Bread"—each of which was independent and freely associated with any file. (*See id.*) Inventors chose to associate "English," "Language," and "Letter" with FileID #1, and "French" and "Bread" with FileID #2. (*See id.*) For further illustration, one can imagine how a user might create and incorporate additional category descriptions into the same file information directory:

| | | Category Descriptions |
|---|---|---|
| FileID #1 | {Location} | English, Language, Letter, [ $N$ other values ...] |
| FileID #2 | {Location} | French, Bread, [ $M$ other values ...] |
| **FileID #3** | **{Location}** | **English, Muffin, Scone** |
| **FileID #4** | **{Location}** | **Bread, Muffin, Scone** |

(*See id.*) Unlike the Schwartz and Cochran systems, the claimed invention allows a "category description [to] be <u>directly</u> associated with any file to mean <u>anything</u> that makes sense to the user." (*See id.*) Inventors noted that their added claim language clarified this distinction by defining each "category description" as "comprising a descriptive name, <u>the category description having no predefined hierarchical relationships with such list or each other</u>." (*See id.*)

Based on the prosecution history, the Court agrees with SpeedTrack that the category description amendments primarily sought to distinguish the claimed invention as a non-hierarchical, versus hierarchical, system. It appears that the change from "categories" to "category descriptions" was made to highlight the difference between "category descriptions," components of a non-hierarchical system, and fields/attributes, components of a hierarchical system as seen in

the prior art. (*See id.* at 16 ("[C]ategory descriptions are not fields; they are directly applied descriptors of files.").) The addition of "description" furthered that goal, because Inventors characterized field/attributes as "not particularly descriptive of the characteristics of a file." (*See id.* at 15.) Inventors also explicitly stated, with emphasis, that the amendment—"each category description comprising a descriptive name, <u>the category descriptions having no predefined hierarchical relationships with such list or each other</u>"—was meant to clarify that "[n]o pre-existing or pre-defined hierarchical relationship must exist between category descriptions and the list of category descriptions, or between each other." (*See id.*)

### 3. The Equivalent in Question Is Merely Tangential to the Rationale Underlying the Amendments.

For the reasons discussed, the Court finds the "category description" amendments were intended to address the hierarchical/non-hierarchical system distinction. Therefore, it appears that the equivalent in question—numerical identifiers that map to alphabetic descriptors—is merely tangential to the rationale underlying the amendments.

Defendants raise several counter-arguments. First, Defendants assert that Schwartz contains the equivalent in question, and thus, the amendment to avoid Schwartz is not tangential. *See Festo*, 344 F.3d at 1369. Specifically, Defendants argue that Inventors "deliberately limited 'category descriptions' to comprise 'descriptive names' in response to Schwartz's disclosure of integer-based file attribute values." (Dkt. No. 272, Opp. Br. at 15:28–16:6.) Schwartz states: "[t]he values that may be assigned to a file [field/]attribute may [comprise] user-defined character strings, such as 'Smith' or 'pump specification,' *or may be an integer*." (Schwartz at 4:19–22 (emphasis added).) Defendant's theory wrongly assumes that field/attribute values are interchangeable with "category descriptions." As the Court explained, field/attribute values are the second tier in a two-tier system—they are assigned to a particular field/attribute bucket, wherein all the values relate to that field/attribute. In contrast, "category descriptions" are independent components with no relation to each other. The fact that Schwartz discloses an integer-only field/attribute value, therefore, does not indicate that Schwartz discloses an integer-only "category description."

13

Defendants also argue that allowing numerical identifiers in place of "category descriptions" is directly contrary the purpose of the "category description" amendments, because "[p]urely numeric identifiers lack the descriptive names specifically required." (*See* Opp. Br. at 17:16–21.) Under Defendant's theory, Inventors aimed "to distinguish prior art references reflecting 'conventional hierarchical file systems' that lacked the alleged benefits of the invention because they did not permit users to associate their own descriptive names with files." (*See id.* at 17:7–11.) Defendants again misunderstand the distinction between hierarchical and non-hierarchical file systems. While Inventors did contrast "category descriptions" with field/attributes that are "not particularly descriptive of the characteristics of a file," it does not follow that the prior art systems prevented users from associating their own descriptive names with files. (*See id.*; Motion Ex. 8 at 15.) Users could input descriptive names as both fields/attributes (*e.g.*, "Language), and field/attribute values (*e.g.*, "French"), but only the field/attribute values were descriptive of particular files. (*See* Schwartz at 4:33–36; Motion Ex. 8 at 15.) Inventors distinguished the prior art on the grounds that it was *structurally* limited, because each field/attribute value had to be linked to a broader field/attribute. (*See* Motion Ex. 8 at 15.)

Defendants further argue that Inventors disclaimed mapping of a numeric identifier to an alphabetic descriptor by distinguishing their claims as having "directly applied descriptors of files." (*See* Opp. Br. at 18:11–19.) Defendants contend that these amendments were made in contrast to Schwartz, which requires field/attributes to map to field/attribute values that then describe the files. (*See id.*) Again, Defendants argument fails, because it conflates hierarchical and non-hierarchical systems. A field/attribute is a broad umbrella that maps to many values, while a numerical identifier maps to a single alphabetic descriptor. (*See* Motion at 21:4–9; Reply Br. at 8:17–19.) Although Inventors disclaimed the hierarchical mapping between field/attributes and field/attribute values, they did not necessarily disclaim the non-hierarchical mapping between numerical identifiers and alphabetic descriptors.

Finally, Defendants argue that numerical identifiers cannot be equivalent to "category descriptions," because Inventors refer to numeric-only identifiers as "unique category descriptive

14

identifier[s]." (*See* '360 Patent, Claim 2.) The '360 Patent specification does state that this unique identifier is "preferably a number," but it also adds that "other identifiers could be used." (*See id.* at 5:11–13.)

Accordingly, the Court GRANTS the motion as it relates to prosecution history estoppel.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES in part SpeedTrack's motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: November 21, 2017

_____
JEFFREY S. WHITE
United States District Judge