UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPEEDTRACK, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., et al.,<br><br>Defendants. | Case No. 4:09-cv-04479-JSW (KAW)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS AND STAY DISCOVERY**<br><br>Re: Dkt. No. 313 |

On April 30, 2018, Defendants Amazon.com, Inc., Dell Inc., BestBuy.com, LLC, BarnesAndNoble.com, LLC, BarnesAndNoble.com, Inc., OfficeMax, Inc., Macy's, Inc., Macys.com, Inc. (dba Macys.com, LLC), Overstock.com, Inc., Recreational Equipment, Inc. ("REI"), Value Vision International (dba Evine Live, Inc., formerly dba ShopNBC.com), and B&H Foto & Electronics Corp. filed a motion to strike Plaintiff's infringement contentions and stay discovery until Plaintiff SpeedTrack, Inc. serves infringement contentions that comply with Patent Local Rule 3-1.

On July 5, 2018, the Court held a hearing, and, after careful consideration of the parties' arguments and the applicable legal authority, for the reasons set forth below, GRANTS IN PART AND DENIES IN PART Defendants' motion to strike and stay discovery, and grants Plaintiff leave to amend its infringement contentions after it has reviewed Defendants' source code.

## I. BACKGROUND

On September 23, 2009, SpeedTrack filed a complaint against Defendants alleging direct infringement of U.S. Patent No. 5,544,360 ("the '360 Patent"), which is directed at systems and methods for categorizing and accessing files in a data storage system. Defendants operate retail websites with file searching capabilities, which SpeedTrack contends infringe the '360 Patent.

1 SpeedTrack has asserted Claims 1, 2, 7, 11, 15, and 20-22 against each of the Defendants. (*See*
2 Decl. of Ryan J. Casamiquela, "Casamiquela Decl.", Dkt. No. 313-1 ¶ 6, Ex. 5 at 1.)
3     Following a lengthy stay pending ex parte reexamination of the '360 Patent and the
4 resolution of several co-pending cases involving the same patent, this action recommenced on
5 April 22, 2016. (Dkt. Nos. 72, 135.)
6     On August 4, 2017, SpeedTrack served "Preliminary Infringement Contentions for the
7 Limited Purpose of SpeedTrack's Early Motion for Partial Summary Judgment." (*See*
8 Casamiquela Decl. ¶ 3, Ex. 2.) SpeedTrack explained that those "preliminary" contentions were
9 merely for the purposes of facilitating early summary judgment proceedings, and that they were
10 not intended as its Patent Local Rule 3-1 infringement contentions. *Id.* at 1.
11     On August 23, 2017, Defendants wrote to SpeedTrack to express concern about the
12 deficiencies of its contentions, including that they were "purely theoretical" and were not "tethered
13 to a component, feature, and/or functionality found in an actual accused system." (Casamiquela
14 Decl. ¶ 4, Ex. 3 at 3.) Defendants requested that SpeedTrack supplement its contentions to explain
15 where and how each limitation of each asserted claim is within each accused system. *Id.*
16 SpeedTrack refused, arguing that supplementation was unnecessary for the resolution of its early
17 summary judgment motion. (Casamiquela Decl. ¶ 5, Ex. 4.)
18     On April 6, 2018, SpeedTrack served its Disclosure of Asserted Claims and Infringement
19 Contentions Pursuant to Patent Local Rule 3-1. (*See* Casamiquela Decl. ¶ 6, Ex. 5.) Fact
20 discovery opened four days later, on April 10, 2018. (Dkt. Nos. 298 & 300.) That day, SpeedTrack
21 served discovery on Defendants, including over 100 individual requests for production of
22 documents per Defendant—amounting to nearly 1,200 production requests total—and between 17
23 and 19 interrogatories per Defendant—totaling 194 interrogatories. (*See* Casamiquela Decl. ¶¶ 8-
24 9, Exs. 7-8.) In addition, SpeedTrack served Rule 30(b)(6) deposition notices on three of the
25 Defendants—B&H Foto, Evine Live, and REI—each containing 50 individual topics for
26 examination, and noticed for the end of May and early June. (*See* Casamiquela Decl. ¶ 10, Ex. 9.)
27     On April 30, 2018, Defendants filed a motion to strike Plaintiff's infringement contentions
28 and stay discovery until Plaintiff complies with Patent Local Rule 3-1. (Defs.' Mot., Dkt. No.

United States District Court
Northern District of California

1 313.) On May 14, 2018, Plaintiff filed an opposition. (Pl.'s Opp'n, Dkt. No. 318.) On May 21,

2 2018, Defendants filed a reply. (Defs.' Reply, Dkt. No. 319.) On May 22, 2018, Plaintiff filed an

3 administrative motion for leave to file a surreply, which was granted. (Pl.'s Surreply, Dkt. No.

4 322-1; Dkt. No. 326.)

## II. LEGAL STANDARD

"The Northern District of California has adopted local rules that require parties to state early in the litigation and with specificity their contentions with respect to infringement and invalidity." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed Cir. 2006). The patent local rules provide "for a streamlined mechanism to replace the series of interrogatories that accused infringers would likely have propounded in [their] absence" and are "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *DCG Sys. v. Checkpoint Techs.*, *LLC*, No. C 11-03792 PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (quotations and footnote omitted); *O2 Micro Int'l Ltd.* 467 F.3d at 1366 n.12 (quoting *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006)).

Patent Local Rule 3-1 requires a party claiming patent infringement to serve on all parties a disclosure of asserted claims and infringement contentions. Infringement contentions must contain (a) each claim of each patent that is allegedly infringed by each party, (b) all accused instrumentalities for each asserted claim, (c) a chart identifying specifically where each limitation of each asserted claim is located within each accused instrumentality, (d) a description of the acts of the alleged indirect infringer that induced the direct infringement by a third party, (e) whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the accused instrumentality, (f) the priority date to which each asserted claim allegedly is entitled if applicable, (g) an identification of each apparatus that practices the claimed invention if applicable, and (h) the basis for the party's allegation of willful infringement if applicable. Patent L.R. 3-1.

A party may amend its infringement contentions "only by order of the Court upon a timely showing of good cause." Patent L.R. 3-6. Non-exhaustive examples of circumstances that may,

3

absent undue prejudice to the non-moving party, support a finding of good cause include: (1) an adverse claim construction; (2) recent discovery of material prior art despite an earlier diligent search; and (3) recent discovery of nonpublic information about the accused product that, despite diligent efforts, was not discovered before service of the infringement contentions. *Id.*

### III. DISCUSSION

As an initial matter, the undersigned notes that the parties did not meet and confer before the motion was filed, but declines to deny the motion on that basis alone. Notwithstanding, the Court is confident that, going forward, the parties will meet and confer in accordance with the undersigned's standing order and the Northern District Guidelines for Professional Conduct, which provide that, prior to filing any motion, a lawyer should speak personally with opposing counsel, in a good faith attempt to resolve or narrow the scope of the dispute. (*See* N.D. Guidelines §§ 10(a),(c).)

#### A. Motion to Strike

Defendants seek to strike Plaintiff's infringement contentions and stay discovery until Plaintiff has served amended infringement contentions that comply with Patent Local Rule 3-1. (Defs.' Mot. at 15.) In this district, motions to strike initial infringement contents are frequently treated as motions to compel the amendment of infringement contentions. *Geovector Corp. v. Samsung Elecs. Co.*, 2017 WL 76950, at *7 (N.D. Cal. Jan. 9, 2017) (citing *FusionArc, Inc. v. Solidus Networks, Inc.*, 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007) ("Case precedent recognizes such 'motions to strike' as requests that plaintiffs be compelled to amend their preliminary contentions to provide additional information."); *Blue Spike v. Adobe Sys.*, 2015 WL 335842, at *4 (N.D. Cal. Jan. 26, 2015) ("Where appropriate, courts treat a motion to strike as a motion to compel amendment to include additional information infringement contentions.")).

"Striking a patentee's infringement contentions is a severe sanction that should be used sparingly and only for good cause." *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-c-05808-HSG, 2015 WL 9023166, at *12 (N.D. Cal. Dec. 16, 2015). While some courts have required a party asserting infringement to show good cause before being granted leave to amend initial contentions, many have simply compelled the asserting party to serve compliant infringement contentions. *Cf.*

4

*Theranos, Inc. v. Fuisz Pharma LLC*, 2012 WL 6000798, at *6 (N.D. Cal. Nov. 30, 2012) (striking infringement contentions without leave where asserting party made only vague allegations "on information and belief" and implicitly conceded that it did not have any additional factual support for its claims), *with Bender v. Maxim Integrated Prods.*, 2010 WL 1135762, at *1 (Denying motion to strike and granting motion to compel infringement contentions that comply with Patent Local Rule 3-1.). For the reasons set forth below, the Court will require Plaintiff to serve compliant infringement contentions once it has reviewed Defendants' source code.

### i. All Unidentified Website or Mobile Applications are Stricken

As an initial matter, Defendants move to strike all contentions against unidentified websites and mobile applications. (Defs.' Mot. at 9.) In opposition, SpeedTrack essentially concedes that the ICs are deficient in this respect, and "agrees to withdraw the portion of its contentions relating to such unnamed websites and mobile applications."[1] (*See* Pl.'s Opp'n at 3.)

As such, the motion to strike is granted as to the unidentified website and mobile applications, and SpeedTrack may amend its contentions, accordingly, if it still seeks to allege such infringement.

### ii. Whether the Limitations are Sufficiently Identified in Each Accused Product

Patent Local Rule 3-1(c) requires an accusing party to provide "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." Patent L. R. 3-1(c). Under this rule, the accusing party "must compare an accused product to its patents on a claim by claim, element by element basis for at least one of each defendant's products." *Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 9023166, at *1.

#### a. "Category Description Table" Limitation

Defendants argue that "[f]or the 'category description table' claim limitation, SpeedTrack advances the theoretical, vague assertion that there are 'data structure(s)' or a combination of data structures somewhere in the accused systems that constitute the 'category description table.'"

---

[1] The Court notes that this is precisely the type of dispute that could have been addressed in a prior meet and confer to narrow the issues before engaging in motion practice. Indeed, if a meet and confer had taken place, defense counsel never would have needed to file a motion on an issue that Plaintiff's counsel did not intend to oppose. (*See* N.D. Guidelines § 10(b).)

5

1 (Defs.' Mot. at 11 (citing OfficeMax Infringement Contentions, "OfficeMax ICs," Casamiquela Decl., Ex. 6 at 16, 17, 39, 52, 71, 72).) Defendants further contend that SpeedTrack's chart relies on screenshots of Defendants' websites, which "fail to provide any factual basis to assume that the websites actually met the limitations of the claims." (Defs.' Mot. at 12.) They argue that this is "particularly problematic," because "the accused websites are functionally identical to the website from the *Wal-Mart* Action that uses the Endeca system," which was ultimately found not to infringe. *Id.*

In opposition, Plaintiff argues that the reason it has not identified, by name and location, Defendants' category description tables are because the source code is not publicly available and is not capable of being reverse engineered. (Pl.'s Opp'n at 11-12.)

In their reply, Defendants argue that "the search functionality appearing in those screenshots—*i.e.*, the ability to search for products online by filtering various product attributes, such as price range or brand—is indistinguishable from functionality shown in screenshots of websites found not to have infringed SpeedTrack's patent in the [*Wal-Mart]* action." (Defs.' Reply at 7) (emphasis in original.)

Defendants are getting ahead of themselves. The undersigned is not tasked with determining whether there is infringement or whether the claim construction in the *Wal-Mart* action, which construed "category description" to require "an alphabetic description," will be used in the current action. (*See* Defs.' Mot. at 11 n. 3.) To do so, would be both premature and outside of the purview of the discovery referral. Indeed, the only issue is whether the infringement contentions comport with Patent Local Rule 3-1. The fact that a prior case involved similar infringement contentions and theories of liability, which were ultimately unsuccessful, is of no consequence at this juncture. Moreover, Defendants' argument in their reply illustrates that they are aware of the theory of infringement, namely that the product searches can be filtered by various attributes.

For the first time at the hearing, Defendants argued that the story told in the infringement contentions was a "fable," because Plaintiff does not have actual knowledge of certain facts, including that "Office Max employees (or persons acting on OfficeMax's behalf) programmed

6

OfficeMax's computer system to create the category description table in at least two ways. . . ." (OfficeMax ICs at 14.) In opposition, Plaintiff argued that it is entitled to make reasonable inferences based on available information. The Court agrees. If Defendants are infringing, to allow them to hide behind nonpublic source code on the grounds that no reasonable inferences could be made—including that someone programmed the source code on their behalf, which undoubtedly occurred—would result in a miscarriage of justice.

In the absence of access to the nonpublic source code, however, Plaintiff cannot fully satisfy the requirements of Patent Local Rule 3-1. Thus, the Court grants Plaintiff leave to amend the infringement contentions once it has had the opportunity to review Defendants' source code.

### b. "File Information Directory" Limitation

Defendants argue that Plaintiff's infringement contentions regarding the "file information directory" are insufficient, because it parrots the claim language. (Defs.' Mot. at 13.) Specifically, they argue that SpeedTrack's failure to identify the "unique file identifier," as required by Claim (1)(b), is vague, "identifies no corresponding structure within the accused systems, [and] provides no basis to assume [that] such a structure is present." *Id.* In opposition, Plaintiff argues that the current ICs are based on the information reasonably available to it, and provide Defendants with reasonable notice as to why it believes that the accused instrumentalities meet the "unique file identifiers" claim requirement. (Pl's Opp'n at 17.) Furthermore, Plaintiff argues that the "unique file identifiers" are used internally and, therefore, are not accessible to SpeedTrack, because it does not yet have access to Defendants' source code. *Id.* In reply, Defendants again rely on the *Wal-Mart* action's finding of non-infringement to support its argument that screenshots are not sufficient to provide a factual basis for infringement. (Defs.' Reply at 8-9.) The Court agrees that Plaintiff's obligation under Patent Local Rule 3-1 requires "more than offer[ing] up a combination of webpage screenshots and speculation." (*Id.*at 9.) In fact, Plaintiff provides far more detail, but, without the benefit of a complete source code production, cannot clearly articulate its basis for infringement.

Defendants further argue that the "file information directory" requires "a set of category descriptions," which Plaintiff alleges "may be found *anywhere* in the computer system—either

7

within one single data structure or within a combination of data structures that have been 'mapped' together." (Defs.' Mot. at 13)(emphasis in original.) In opposition, Plaintiff argues that it was describing the possibility that "Defendants map their numeric identifiers to their alphabetic descriptive names in an index that is separate from their "category description table," rather than directly in the 'category description table,' as also alleged." (Pl.'s Opp'n at 18.) SpeedTrack would be able to clarify this contention once it has access to the source code and can identify how the mapping was accomplished.

Accordingly, Plaintiff is granted leave to amend its infringement contentions.

### iii. Doctrine of Equivalents

Defendants argue that Plaintiff has failed to identify any alleged equivalents. (Defs.' Mot. at 14.) "The doctrine of equivalents exists to prevent fraud on the patent" and not "to give a patentee a second shot at proving infringement" if it is not "literally present." *Creagri, Inc. v. Pinnaclife Inc., LLC*, No. 11-CV-06635-LHK-PSG, 2012 WL 5389775, at *6 (N.D. Cal. Nov. 2, 2012)(citation omitted). For that reason, the plaintiff must explain why the doctrine of equivalents might lead to infringement in the absence of direct infringement. *Id.* Boilerplate language asserting that the doctrine of equivalents has been met as an alternate theory is generally not permitted. *Id.*

In opposition, SpeedTrack argues that its contentions identify the alleged equivalent. (Pl.'s Opp'n at 9.) Specifically, the alleged equivalent is "the use of numeric identifiers in the place of the alphabetic descriptive names to which each numeric identifier is mapped." *Id.* (citing OfficeMax ICs at 17.) Indeed, Plaintiff explains how the category description table uses numeric identifiers to map to an alphabetic descriptive name in the same way that the alphabetic descriptive name would be mapped to a specific product to provide the relevant search results. (*See* OfficeMax ICs at 17-18.) Plaintiff then explains how its charted language satisfies the insubstantial differences test, the function/way/result test, and the interchangeability test. (*See id.*; Pl.'s Mot. at 9-11.) Moreover, that the doctrine of equivalents language is similar in the other charted claims does not render the language boilerplate. Rather, the similarities can be attributed to the fact that the mapping is likely consistent across the accused instrumentality.

Accordingly, while the Court finds that the ICs address how the doctrine of equivalents

1   might lead to infringement, they would benefit from amendment after the source code review is
2   completed. Thus, Plaintiff is granted leave to amend the doctrine of equivalents allegations.

**B. Motion to Stay**

When a plaintiff's infringement contentions are found insufficient under the Patent Local Rules, courts in this district often stay discovery, including a defendant's obligation to serve invalidity contentions "[u]ntil plaintiff meets the burden of providing infringement contentions compliant with Patent L.R. 3-1." *Infeneon Techs. v. Volterra Semiconductor*, 2013 WL 322570, at *5 (N.D. Cal. Jan. 28, 2013) (citations omitted). At the hearing, Defendants acknowledged that they had already served their invalidity contentions pursuant to the undersigned's June 14, 2018 order. Plaintiff, however, stated that the production was incomplete, and that it currently lacked the tools necessary to conduct an efficient review. The parties agreed to meet and confer in an effort to resolve this dispute without court intervention.

Plaintiff stated that, once the source code production was complete, it needed 90 days to review the source code and serve amended infringement contentions.

At the hearing, Plaintiff stated that it served other fact discovery on April 10, because it wanted to show that it was diligently prosecuting its case. Plaintiff conceded that most of the written discovery was unnecessary at this juncture, as were the noticed depositions, but that it required the technical documents and manuals sought in order to complete its review of the source code.

Since the Court is granting Plaintiff leave to amend its infringement contentions, it will not require Defendants to respond to the numerous discovery requests before the amended contentions are served. The Court, however, recognizes that Defendants' original deadline to serve their invalidity contentions and complete their source code production was May 21, 2018. (*See* Pl.'s Surreply at 1.) Instead of complying with the deadline, Defendants impermissibly refused to perform based on this pending motion, which was found to be improper. (Dkt. No. 327.) Given that Defendants' actions resulted in a substantial delay, the Court expects Defendants to provide Plaintiff with the manuals and technical documents, as well as any third-party software or tools, which will enable Plaintiff to conduct an expeditious review of the complete source code

9

1 production. The undersigned will not look kindly on further attempts to obstruct discovery.

Accordingly, Plaintiff has 120 days from the date of this order to serve amended infringement contentions. Thirty days should be more than sufficient for Defendants to complete the source code productions, produce technical documents and manuals, and produce or install any software necessary for the review. Defendants' other discovery obligations are temporarily stayed pending service of the amended infringement contentions.

## IV. CONCLUSION

In light of the foregoing, Defendants' motion to strike the infringement contentions and stay discovery is GRANTED IN PART AND DENIED IN PART. Plaintiff shall serve amended infringement contentions within 120 days of this order, absent a stipulation of the parties or order of the court.

This affects the current claim construction briefing schedule, so the parties are ordered to meet and confer and file a stipulation before the presiding judge to extend the briefing schedule, the tutorial, and claim construction hearing, including proposed dates.

IT IS SO ORDERED.

Dated: July 6, 2018

KANDIS A. WESTMORE
United States Magistrate Judge