United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPEEDTRACK, INC,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., et al.,<br><br>Defendants. | Case No. 4:09-cv-04479-JSW<br><br>**CLAIM CONSTRUCTION ORDER**<br>Re: Dkt. Nos. 359, 362, 363 |

The Court has been presented with a technology tutorial and briefing leading up to a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). This Order construes the disputed claim terms selected by the parties, which appear in the patent at issue in this case, United States Patent No. 5,544,360 ("the '360 Patent"), entitled "Method for Accessing Computer Files and Data, Using Linked Categories Assigned to Each Data File Record on Entry of the Data File Record."

**BACKGROUND**

A.  **The '360 Patent**

Plaintiff SpeedTrack, Inc. ("SpeedTrack") contends that Defendants Amazon.com, Inc. et al. ("Defendants") infringe its patent. The '360 Patent is directed to a system and method for accessing computer files according to user-defined criteria. ('360 Patent, Abstract.) According the '360 Patent, "a typical computer system organizes data into files (analogous to papers in a paper filing system) and directories (analogous to the folders and hanging files)." (*Id.*, 1:38-41.) To store and retrieve files, traditional prior art systems implemented a "hierarchical filing structure." (*Id.*, 1:28-31.) In such systems, directories are organized into "an upside-down tree" where a root directory contains "a number of subdirectories," and the subdirectories "contain other

1

subdirectories and files." (*Id.*, 1:44-54.) One problem with hierarchical file systems is that "[i]t becomes more difficult for the user to decide where to store a particular file" because "a document may logically belong within many different folders." (*Id.*, 2:12-23.) To solve this problem, the '360 Patent proposes the use of logical "hybrid folders," which "contain those files whose content overlaps more than one physical directory." (*Id.*, 2:40-42.)

The invention of the '360 Patent uses three components: (1) a "category description table" that contains "a plurality of category descriptions," (2) a "file information directory" that contains entries "corresponding to a file on the data storage system" each of which has an associated "set of category descriptions," and (3) a "search filter" defined by a user that comprises a set of category descriptions and an optional operator term. (*Id.*, claims 1, 22.) The search filter implements a "guarantee" that there is "at least one entry in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter." (*Id.*) This guarantee is achieved because "[a]ll category descriptions are disabled which, if added to the search filter defined by the user, would result in no matching files." (*Id.*, 12:21-24.)

## B. Prior Claim Constructions

The '360 Patent has previously been construed by Judge Hamilton in this District in *Speedtrack, Inc. v. Wal-Mart Stores, Inc.*, No. C 06-7336 PJH, 2008 WL 2491701 (N.D. Cal. June 19, 2008). The Court notes the following *Wal-Mart* constructions:

| Term | *Wal-Mart* Construction |
|---|---|
| "category description" | information that includes a name that is descriptive of something about a stored file |
| "category description table" | at least one list or array, configured in any desired manner, or taking any form, containing a plurality of category descriptions |
| "file information directory" | a directory comprising information corresponding to at least one file |
| "having no predefined hierarchical relationship" | The category descriptions have no predefined hierarchical relationship. A hierarchical relationship is a relationship that pertains to hierarchy. A hierarchy is a structure in which components are ranked into levels of |

| | |
|---|---|
| | subordination; each component has zero, one, or more subordinates; and no component has more than one superordinate component. |
| "search filter" | a set of one or more category descriptions (depending upon the context of claim 1 or claim 20) and at least one logical operator if there is more than one category description in the search filter that is used to search |
| "file" | any collection of data or information stored on a computer system |
| "such list" | a category description table |
| "means for reading and writing data from the data storage system, displaying information, and accepting user input" | a computer system, embodied in either a single computer or a distributed environment, having a hard disk drive, a computer display, and a computer mouse, and equivalents thereto |
| "user" | one that uses—may be a person or another computer |
| "creating in the computer system" | producing in the computer system |

The Federal Circuit affirmed Judge Hamilton's construction of "category description" in *Speedtrack, Inc. v. Endeca Techs., Inc.*, 524 F. App'x 651 (Fed. Cir. 2013). Accordingly, the *Wal-Mart* construction of "category description" governs under *stare decisis*. *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1139-40 (Fed. Cir. 2018).

The remainder of the *Wal-Mart* constructions are entitled to "reasoned deference" based on their persuasive value. *See Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998-HGS, 2017 WL 550453, at *3 (N.D. Cal. Feb. 10, 2017); *Visto Corp. v. Sproqit Techs., Inc.*, 445 F. Supp. 2d 1104, 1108-09 (N.D. Cal. 2006); *but see Aircraft Technical Pub'rs v. Avantext, Inc.*, No. C 07-4154 SBA, 2009 WL 3817944, at *3 (N.D. Cal. Nov. 10, 2009) (noting that courts have a duty to render an "independent judgment" on claim construction). Accordingly, the Court will consider the *Wal-Mart* constructions, but will render an independent judgment as to the ultimate constructions in this case.

//

# ANALYSIS

## A. Legal Standard.

Claim construction is a question of law for the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996). "The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). The Court has an obligation "to ensure that questions of the scope of the patent claims are not left to the jury." *Every Penny Counts, Inc. v. American Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009) (quotation omitted). Accordingly, the Court must ensure that the parties' disputes are "fully resolved" and assign "a fixed, unambiguous, legally operative meaning to the claim." *Id.*

Claim terms are generally given "their ordinary and customary meaning"—*i.e.*, "the meaning that the terms would have to a person of ordinary skill in the art at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). There are only two exception to this rule: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

In determining the ordinary and customary meaning, the claim language "provide[s] substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. However, a person of ordinary skill in the art is "deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. The scope of the claims must always be "determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Soceta' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). The construction that "stays true to the claim language and most naturally aligns with the patent's description of the invention" governs. *Id.* Accordingly, the specification "is always highly relevant to the claim construction analysis" and usually "dispositive." *Id.* at 1315.

4

In addition to the claims and the specification, the prosecution history may be used "to provide[] evidence of how the PTO and the inventor understood the patent." *Id*. at 1317. "Any explanation, elaboration, or qualification presented by the inventor during patent examination is relevant, for the role of claim construction is to 'capture the scope of the actual invention' that is disclosed, described and patented." *Fenner Inv., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1323 (Fed. Cir. 2015). The claims, specification, and prosecution history together constitute the "intrinsic evidence" that forms the primary basis for claim construction. *Phillips*, 415 F.3d at 1312-17 (citation omitted). Courts may also consider extrinsic evidence, such as technical dictionaries and expert testimony, "if the court deems it helpful in determining the 'true meaning of language used in the patent claims'" and it does not contradict the intrinsic evidence. *Id*. at 1318 (quoting *Markman*, 52 F.3d at 980).

**B.  Claim Construction.**

**1.  "[category descriptions] having no predefined hierarchical relationship"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | Final Construction |
|---|---|---|
| The category descriptions have no predefined hierarchical relationship. A hierarchical relationship is a relationship that pertains to a hierarchy. **A hierarchy is a structure in which components are ranked into levels of subordination; each component has zero, one, or more subordinates; and no component has more than one subordinate component.** | The category descriptions have no predefined hierarchical relationship. A hierarchical relationship is a relationship that pertains to a hierarchy. **A data field and its associated values have a predefined hierarchical relationship.** | The category descriptions have no predefined hierarchical relationship. A hierarchical relationship is a relationship that pertains to a hierarchy. A hierarchy is a structure in which components are ranked into levels of subordination; each component has zero, one, or more subordinates; and no component has more than one subordinate component. |

The term "[category descriptions] having no predefined hierarchical relationship" appears in claims 1, 15, 20, and 22 of the '360 Patent. The full limitation containing the term states: "the category descriptions having no predefined hierarchical relationship *with such list or each other*."

The "list" refers to the lists or arrays in the category description table.[1] Thus, the lack of "predefined hierarchical relationship" describes two relationships: (1) the relationship between a list in the category description table and the category descriptions of that list, and (2) the relationship among the category descriptions themselves.

In the *Wal-Mart* litigation, Judge Hamilton adopted the parties' agreed-to construction for this term: "The category descriptions have no predefined hierarchical relationship. A hierarchical relationship is a relationship that pertains to a hierarchy. A hierarchy is a structure in which components are ranked into levels of subordination; each component has zero, one, or more subordinates; and no component has more than one subordinate component." *Wal-Mart*, 2008 WL 2491701, at *9. Speedtrack now urges the Court to adopt the same construction. Defendants, however, seek to eliminate the definition of "hierarchy" and insert a statement that a field and value have a predefined hierarchical relationship. Defendants argue that the plain meaning of "hierarchy" includes relationships where a component has more than one superordinate component (*i.e.*, a child with more than one parent). Defendants also argue that prosecution disclaimer prevents Speedtrack from arguing that a field and value have no predefined hierarchical relationship.

The Court finds that the *Wal-Mart* construction is well-supported by the intrinsic evidence and legally correct. The definition of "hierarchy" disputed by Defendants comes from the specification of the '360 Patent. The '360 Patent describes a hierarchical relationship in Figure 1. ('360 Patent, 1:44-54.) Figure 1 shows a "tree-type" directory structure that has a "root directory" and multiple subdirectories, each of which has multiple children and only one parent. (*Id.*) One problem with such hierarchical structures is that "a document may logically belong within many different folders." (*Id.*, 2:14-23.) To solve this problem, the '360 Patent proposes the use of "hybrid folders," as shown in Figure 2. (*Id.*, 2:30-48.) Figure 2 shows a structure similar to

---

[1] The Court notes that the term "list" has no antecedent basis in claims 1, 15, or 22. However, the agreed-to construction of "category description table" is "at least one list or array containing a plurality of category descriptions." Based on the parties' consensus, as well as the prosecution history and the construction in the *Wal-Mart* litigation, the Court understands that the category descriptions have "no predefined hierarchical relationship" to the lists or arrays in the category description table, as well as to each other.

Figure 1, except that the "hybrid folders" belong to multiple parent directories. (*Id.*, Fig. 2.) Notably, the '360 Patent states that hybrid directories "are not possible" in a typical hierarchical directory structure. (*Id.*, 2:59-50.) Thus, components that have more than one superordinate component (*i.e.*, a child with two parents) are not hierarchical under the definition of the '360 Patent because the specification states that they are not "not possible" in a hierarchical structure.

Furthermore, the *Wal-Mart* construction is supported by the prosecution history and accounts for the disclaimers made during prosecution. During prosecution, Speedtrack distinguished the Schwartz reference, which described a system that allowed a user to characterize files using file attributes (e.g., "language") and values (e.g., "French"). Speedtrack acknowledged that the "'category descriptions' of the present invention are somewhat similar to the <u>values</u> that can be assigned by a user to a new file attribute," while "[f]ile attributes under Schwartz are basically similar to the category <u>types</u> described in the present application." (Dkt. No. 362-5 ("May 9, 1994 Amendment") at 13 (emphases in original); *see also* '360 Patent at Fig. 3 (showing category types and category descriptions).) However, Speedtrack amended its claims to distinguish Schwartz, including to add the limitation that the "category descriptions hav[e] no predefined hierarchical relationship with such list or each other."[2] (Dkt. No. 362-3 ("Feb. 3, 1995 Amendment") at 2)

Speedtrack made three arguments to explain why Schwartz did not satisfy this limitation. First, Speedtrack argued that "Schwartz is simply a variation of convention hierarchical file systems, in which fields/attributes are defined in a first step, and values associated with data files are entered into such fields/attributes in a second step." (*Id.* at 14.) Second, Speedtrack argued that "there is also a 'hierarchical' relationship between values and fields" because "each value MUST correspond to an associated field type." (*Id.*) For example, "the term 'French' MUST

---

[2] The claims at the time of amendment did not include a "category description table." (Feb. 3, 1995 Amendment at 2-12.) Instead, claims recited that category descriptions were selected from "at least one defined list." The full amendment in response to Schwartz added the requirement that the "at least one defined list" have "a plurality of category descriptions, each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other." (*Id.*)

7

refer to language, and not to any other characteristic of the filed (such as food type, culture, travel, etc.)." (*Id.* at 15.) Third, "the values associated with each field have a pre-defined relationship to each other—they must all be of the same type as the field." (*Id.*) By contrast, in the '360 Patent, "the category description can be <u>directly</u> associated with any file to mean <u>anything</u> that makes sense to the user." (*Id.* (emphasis in original).)

The *Wal-Mart* construction accounts for each of these arguments. First, it excludes conventional hierarchical file systems because it excludes hierarchies where each component has up to three subordinate components and at most one superordinate component. Second, the construction precludes systems with field and value hierarchical relationships because it specifies that the category descriptions "have no predefined hierarchical relationship" to the list to which they belong. As shown in Figure 3, each category description list (shown as a column) has an optional category type (which Speedtrack analogized to a "field"). A hierarchical relationship between a category type and category descriptions would necessarily mean a hierarchical relationship between the category descriptions and the list defined by the category type, which would then be excluded under the *Wal-Mart* construction.[3] Indeed, the *Wal-Mart* construction is broader than the prosecution disclaimer because it excludes hierarchical relationships between *fieldless* lists and their constituent category descriptions.

Finally, although it presents a closer case, the *Wal-Mart* construction appears to account for the lack of relationship among category descriptions. On its face, the prosecution history appears to disclaim systems where category descriptions have any predefined relationship to each other of any kind. (*See* Feb. 3, 1995 Amendment at 15 ("[In Schwartz] the values associated with each field have a pre-defined relationship to each other—they must all be of the same type as the field.").) Since neither party asked for such broad disclaimer, however, the Court does not consider whether Speedtrack disclaimed category descriptions that have nonhierarchical

---

[3] The Court recognizes that a set of values may be hierarchically defined in relation to a field someplace outside of the category description table. Such hierarchical relationships appear to fall outside of the scope of the claimed invention. Nevertheless, the Court will entertain noninfringement arguments based on prosecution disclaimer under that scenario.

8

relationships to each other and finds that the requirement that category descriptions have no predefined "hierarchical" relationship is sufficient to resolve the parties' current dispute.

Defendants' construction suffers from several deficiencies that make it inappropriate independent of the *Wal-Mart* construction. First, Defendants attempt to introduce the terms "field" and "value" that are found nowhere in the '360 Patent or, indeed, in Schwartz.[4] The inclusion of these terms is likely to confuse the jury and require the introduction of extrinsic evidence to explain "field" and "value" systems. Second, Defendant's argument is overbroad. The prosecution history does not show disclaimer of *all* field-and-value relationships, but only those where a value "must" be associated with a field. By contrast, a value that could be associated dynamically with one or multiple fields (e.g., "French" associated with "language," "food type," and "travel") would not fall within the scope of the disclaimer.[5] Third, Defendants' construction excludes any explanation of the term "hierarchy." The lack of a definition renders Defendants' construction tautological and unhelpful to the jury,

Accordingly, the Court construes "[category descriptions] have no predefined hierarchical relationship" as: "The category descriptions have no predefined hierarchical relationship. A hierarchical relationship is a relationship that pertains to a hierarchy. A hierarchy is a structure in which components are ranked into levels of subordination; each component has zero, one, or more subordinates; and no component has more than one subordinate component."

//

//

//

---

[4] Schwartz describes "file attributes" and associated "values." During prosecution, Speedtrack stated in a parenthetical that file attributes "are the same as conventional fields." (Feb. 3, 1995 Amendment at 14.) The varying language in Schwartz underscores that the nomenclature is less important than the substance of the relationship for the construction of "hierarchical."

[5] For example, in Figure 3 of the '360 Patent, category types and category descriptions—which are similar to fields and values—are not predefined hierarchical because category descriptions are not *required* to be associated with any category type. (*See* '360 Patent, 8:21-30 (explaining that the column position of a category description "is not significant" and only "used for the convenience of the user"), 8:52-60 (allowing the user to change the category type for a category description).)

9

### 2. "File"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | Final Construction |
|---|---|---|
| Any collection of data or information stored on a computer system | A collection of data that a computer's operating system recognizes as unitary and self-contained | Any collection of data or information stored on a computer system (as interpreted in this Order) |

The term "file" appears in claims 1-21 (all claims) of the '360 Patent. In the *Wal-Mart* litigation, Judge Hamilton construed this term to mean "any collection of data or information stored on a computer system." *Wal-Mart*, 2008 WL 2491701, at *11-12. This construction comes from the express definition of "file" provided in the '360 Patent. ('360 Patent, 4:64-66 ("The term 'file' should be understood to mean any collection of data or information stored on a computer system.").) Accordingly, because the patentee acted as a lexicographer, the definition provided in the specification governs. *Thorner*, 669 F.3d at 1365-66.

The lexicography, however, does not resolve the parties' dispute in this case.[6] The Court therefore provides additional guidance on the construction itself.[7] *See Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Services, Inc.*, 674 F.3d 1365, 1373 (Fed. Cir. 2012) ("[I]n those cases in which the correct construction of a claim term necessitates a derivative construction of a non-claim term, a court may perform the derivative construction in order to elucidate the claim's meaning."); *Edwards Lifescience LLC v. Cook Inc.*, 582 F.3d 1322, 1334 (Fed Cir. 2009) (affirming district court's construction of a disputed term within its own claim construction); *see also Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 957-58 (Fed. Cir. 2014) (affirming district court's construction of patentee's lexicography); *Cordis Corp. v. Boston Scientific Corp*, 658 F.3d 1347, 1355-57 (Fed. Cir. 2011) (finding that "nothing prevented the district court from clarifying" its constructions and affirming JMOL based on correct interpretation of the construction).

First, the term "collection of data or information stored on a computer system" requires

---

[6] The parties dispute whether a dynamically collected set of information, such as a google search page assembled in response to a search query, constitutes a "file." Judge Hamilton did not apparently consider this issue in the *Wal-Mart* order.

[7] Derivative claim construction is a question of law subject to the ordinary principles of claim construction. *Advanced Fiber Techs.*, 674 F.3d at 1374.

10

that the data or information form a collection—*i.e.*, a set of information that the operating system recognizes as a unit. The parties agree on this plain meaning of the term "collection." (*See* Dkt. No. 380 ("Tr.") at 58:14-25, 67:9-22.) The requirement for a "collection" to be a coherent unit is further supported by the intrinsic evidence. The invention of the '360 Patent involves labeling "files" with category descriptions and then retrieving them based on the user's selected category descriptions. Such labeling and retrieval would not be possible unless the operating system could determine the "metes and bounds" of a file. Moreover, an uncollected set of unrelated data would not have a single file name, file location, and date of creation, as claimed and shown in Figure 4. The limitations recited in the claims—such as creating entries in a file information directory "corresponding to a file" (claim 1) or "associating with a file at least one category description" (claim 20)—would also not be possible unless the operating system could determine the unit of information that constitutes the file. Thus, the "collection of data or information stored on a computer system" must be a collection—a coherent unit recognized by the operating system—rather than an uncollected set of unrelated information.[8]

Second, the set of data or information must be "stored" as a collection—*i.e.*, it must form a collection at the time of storage. The adjective "stored" modifies "collection of data or information," rather than "data or information." On its face, the lexicography thus excludes information that is stored as disparate bits of data that only become "collected" into a unit upon retrieval. The intrinsic evidence confirms this interpretation. The specification states that "[a] typical computer system organizes data into files" and that a hierarchical file structure "is too rigid for many applications where information must be organized into files." ('360 Patent, 1:39-41, 2:24-26.) Hence, the purported invention of the '360 Patent is to improve methods for accessing data that has already been "organized" into files. The prosecution history also confirms this interpretation. During prosecution, Speedtrack distinguished U.S. Patent No. 5,206,949 ("Cochran") on the basis that "the present invention is not directed to generating queries or data

---

[8] The specification of the '360 Patent describes the "operating system" as performing the storage and retrieval of files on a computer system. (*e.g.*, '360 Patent, 6:33-56, 11:44-12:20.) The term should not be understood as limiting and refers here to any system that performs storage and retrieval functions on a computer.

11

sets for a database, but is method for accessing <u>files</u> in a data storage system." (May 9, 1994 Amendment at 14.) A set of disparately stored data "collected" into a unit upon retrieval would be equivalent to generating a data set, not accessing already-stored files. Accordingly, the data or information must exist as a "collection" at the time of storage to constitute a "file."

This does not, however, mean that the data must be stored in a single location. The specification expresses intent to operate without regard to backend storage systems. For example, it states that one purpose of the alleged invention is "provide a method for accessing files consonant with the way users think of them, and *not limited to how such files are stored in the computer*." ('360 Patent, 2:50-53 (emphasis added).) The specification also states that a file may be stored in either a hierarchical or a non-hierarchical file system and may exist in a distributed data storage environment. (*Id.*, 4:22-26, 16:44-46.) Indeed, the specification suggests that its invention could be used to replace normal file structures entirely. (*Id.*, Abstract.) Thus, although data or information must be stored as a logical "collection" to constitute a file, the '360 Patent appears to be agnostic about the way that the data is physically stored on the computer.

Accordingly, the Court construes "file" as "any collection of data or information stored on a computer system." The term "collection of data or information" means "a set of data or information that the operating system recognizes as a unit." The "data or information" must exist as a collection when stored, but it does not need to be stored in a single location.

### 3. "File Location Information"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | Final Construction |
|---|---|---|
| information that can be used to identify a file | fully qualified file path including volume or drive and directory chain for a file in an operating system file system, or an operating system alias record referencing such a file path | information that is sufficient to locate a file |

The term "file location information" appears in claims 18-21 of the '360 Patent. Judge Hamilton did not previously construe this term. SpeedTrack proposes the definition "information that can be used to locate a file." Defendants object to this definition on the ground that it "omits .

12

. . information *sufficient* for the system to find a previously stored file" and urges a construction requiring a fully qualified file path or an alias. In response, SpeedTrack indicates that it is amenable to modify its construction to "information provided that is sufficient to locate a file."

SpeedTrack's amended construction sufficiently addresses Defendants' concern and embodies the intrinsic evidence. Claim 20 recites storing on a data storage system a "file record" that includes information for a file, including: "the file name," "file location information," and "the associated category descriptions for the file." ('360 Patent, claim 20.) Claim 21 further recites "accessing each selected file on the data storage system using the file location information from the file record." (*Id.*, claim 21.) The claims thus require the "file location information" to be sufficient to access each selected file. The specification imposes no additional restrictions on the "file location information." It states that the file location information may comprise "a record entry in the FID" or "an Alias Record" and may use "direct or indirect addressing." (*Id.*, 6:19, 6:33-38.) However, the specification makes clear that these are merely embodiments and not part of the "present invention." (*Id.*, 6:33:34 ("When the invention is used under some operating systems . . ."), 6:35 ("However, in one embodiment . . .").) SpeedTrack's construction of "information that is sufficient to locate a file" thus captures the ordinary meaning of "file location information" consistent with the claims and the specification of the '360 Patent.

Defendants' proposed construction for a "fully qualified file path" or an "alias record" improperly imports limitations from the specification. *Phillips*, 415 F.3d at 1322. The specification does not describe any particular type of file location information to be used in the "present invention." On the contrary, the specification expresses intent to operate in a wide variety of file storage systems, including hierarchical, non-hierarchical, and hybrid directory systems; distributed storage environments; and a wholly new operating system based on hybrid folders. ('360 Patent, Abstract, 4:22-26, 16:44-46.) Defendant's construction improperly limits file storage systems to embedded directory structures and thus must be rejected.

Accordingly, the Court construes "file location information" as "information that is sufficient to locate a file."

//

#### 4. "file name" / "name of each file"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | Final Construction |
|---|---|---|
| information that can be used to identify a file | name for a file in an operating system that distinguishes it from all other files in a particular file system directory | a name used to identify a file |

The term "file name" or "name of each file" appears in claims 6, 11-14, and 18-21 of the '360 Patent. Judge Hamilton did not previously construe this term.

SpeedTrack proposes the definition "information that can be used to identify a file." Defendants argue that the file must be "in an operating system" and that the file name must "distinguish[]" the file from all other files in the file system directory. Defendants argue that SpeedTrack's construction is not supported by intrinsic or extrinsic evidence and that it conflates file names with other identifying information, such as a unique creation time. SpeedTrack indicates that it is amenable to modifying the construction to "a name used to identify a file"—the construction agreed to by the parties in the *Wal-Mart* litigation—or "one or more characters used to identify a file," a dictionary definition of the term.

Claim 20 recites a "file name" as part of file record on a data storage system. ('360 Patent, claim 20.) Claims 6, 12, 13, and 14 describe using the file name to select and open a file. (*Id.*, claims 6, 12-14.) The claim language thus suggests that a file name uniquely identifies a file. The specification does not impose additional requirements for the "file name." Figure 4 shows file names consistent with their ordinary use, including "jones.mem" and "minutes.1." (*Id.*, Fig. 4.) A file name is show as different from the file location or a unique creation date and time, which also identify a file in a file information directory. (*Id.*) Accordingly, SpeedTrack's modified construction of "a name used to identify a file" properly captures the scope of the term as used in the claims and the specification.

Defendants' construction suffers from the same problem as their construction for "file location information," namely, that it attempts to limit the file storage system to directory structures. As described above for "file location information," the '360 Patent evinces intent to operate in a variety of file storage systems and any attempt to limit such systems is improper.

14

Moreover, Defendants' construction appears to conflict with the specification, which describes using an alias in an operating system to locate a file even if it has been renamed or moved. (*Id.*, 11:51-12:20.)

Accordingly, the Court construes "file name" as "a name used to identify a file."

**5. "wherein for each category description in the search filter there is guaranteed to be at least one entry in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | Final Construction |
|---|---|---|
| wherein for each category description in the search filter there is **always at least one file** in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter | Section 112(f) step-plus-function applies, claim is indefinite for failing to disclose required algorithm | wherein for each category description in the search filter there is always at least one file in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter |

The limitation "wherein for each category description in the search filter there is guaranteed to be at least one entry in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter" appears in claim 1 of the '360 Patent. Judge Hamilton did not construe this clause in the *Wal-Mart* litigation, but the parties stipulated to the construction of "guaranteed to be at least one entry" to mean "always at least one file." (Dkt. No. 359-20, Revised Joint Claim Construction and Prehearing Statement at 3.)

Defendants contend that the "wherein" clause should be interpreted as step-plus-function under 35 U.S.C. § 12 ¶ 6.[9] Defendants argue that claim 1 is invalid because the specification fails to disclose an algorithm that is "guaranteed" to produce at least one entry in response to a search filter. SpeedTrack disagrees that Section 112 ¶ 6 applies and argues that no construction is needed. SpeedTrack nevertheless proposes that the Court adopt the *Wal-Mart* parties' stipulation

---

[9] Defendants brought their argument under 35 U.S.C. § 112(f). Because the '360 Patent was filed on February 3, 1995, the America Invents Act (AIA) does not apply and the relevant statutory provision is the pre-AIA 35 U.S.C. § 112 ¶ 6. Since the relevant portions of the statutes are identical, the Court construes Defendants' argument under 35 U.S.C. § 112 ¶ 6.

15

that "guaranteed to be at least one entry" means there is "always at least one file."

Section 112 ¶ 6 provides that "an element in a claim for a combination may be expressed as a . . . step for performing a specified function without the recital of . . . acts in support thereof, and such claim shall be construed to cover the corresponding . . . acts described in the specification and equivalents thereof." 35 U.S.C. § 12 ¶ 6. Section 112 ¶ 6 was "intended to permit use of means [steps] expressions without recitation of all the possible means [steps] that might be used in a claimed apparatus [method]." *O.I. Corp. v. Tekmar Co., Inc.*, 115 F.3d 1576, 1583 (Fed. Cir. 1997). The Federal Circuit has expressed strong reservations about applying Section 112 ¶ 6 broadly in the context of method claims: it stated that "[i]f we were to construe every process claim containing steps described by any 'ing' verb, such as passing, heating, reacting, transferring, etc. into a step-plus-function limitation, we would be limiting process claims in a manner never intended by Congress." *Id*.

Accordingly, Section 112 ¶ 6 "is implicated only when steps plus function without acts are present." *Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1028 (Fed. Cir. 2002). Where the claims do not recite language that indicates intent for Section 112 ¶ 6 to apply—such as "steps for"—step-plus-function does not apply unless "the limitation contains *nothing* that can be construed as an act." *Masco Corp. v. United States*, 303 F.3d 1316, 1327 (Fed. Cir. 2002) (emphasis added). The language "steps of" does not indicate a similar intention, and, on the contrary, creates the presumption that step-plus-function does not apply. *Cardiac Pacemakrers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1382 (Fed. Cir. 2004).

Such is the case here. Claim 1 does not recite "steps of"; it recites "steps for." Accordingly, step-plus-function presumptively does not apply. *Cardiac Pacemakers*, 381 F.3d at 1382. Even assuming that no presumption applied, claim 1 is still not recited in a step-plus-function manner. The full relevant language of claim 1 states:

> A method . . . comprising the steps of:
> ….
> [] creating in the computer system a search filter comprising a set of category descriptions,
>
> > wherein for each category description in the search filter there is guaranteed

16

> to be at least one entry in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter

As shown in claim 1, the "step" in the hypothetical step-plus-function limitation is "step[] of," but the "function" is "creating in the computer system a search filter"—not "guaranteed to be at least one entry," as Defendants contend. Alternatively, the "step" is "creating in the computer system a search filter," while the function is "guarantee[ing] . . . at least one entry in the file information directory." As Speedtrack convincingly argues, "creating in the computer system a search filter" is an "act," not an abstract step, because it indicates "how" a function is accomplished. *Masco*, 303 F.3d at 1327. Defendants' complaint that the act is insufficient to achieve the guarantee is irrelevant; there is not rule that converts a concrete act into an abstract step based on perceived deficiency to accomplish a function.

The remainder of Defendants' arguments are legally incorrect. Defendants claim that step-plus-function applies because claim 18 recites parallel language in a means-plus-function manner. Putting aside that claim 18 is parallel to *claim 20*, not *claim* 1, and recites the function of "automatically disabling . . . selectability of category descriptions," not "guarantee[ing] . . . at least one entry," the Federal Circuit has rejected the argument that parallel language in a means-plus-function claim means that step-plus-function applies to a method claim. *O.I. Corp*, 115 F.3d at 1583. Defendants also argue that *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) overruled the presumption that step-plus-function does not apply where the claims do not recite the term "step for." As noted repeatedly in this District, *Williamson* only held that a similar presumption for means-plus-function claims is not "strong." 792 F.3d at 1349. At bottom, ruling in favor of the Defendants would open a Pandora's box that allows virtually any method claims to be interpreted as step-plus-function for lack of absolute precision in describing how a function is accomplished. The Court declines to do so, and follows the precedent that step-plus-function does not apply where the patentee expressed no intention for the statute to apply.

SpeedTrack argues that "guarantee to be at least one entry" should be construed to mean that there is "always at least one file." Defendants do not object to SpeedTrack's proposal. The construction is consistent with the intrinsic evidence: the '360 Patent states that "the invention

17

provides: . . . access to files which permits a user to create a search filter of categories of files using precise category names to which the files belong, *with the assurance that the filter will always find some files*." ('360 Patent, 16:30-39 (emphasis added).)

Accordingly, the Court construes "wherein for each category description in the search filter there is guaranteed to be at least one entry in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter" as: "Wherein for each category description in the search filter there is always at least one file in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter."

### 6. Stipulated Claim Constructions

The Court notes the following claim constructions stipulated-to by the parties:

| Claim Term | Stipulated Construction |
|---|---|
| "search filter" (claims 1, 7, 11, 20, and 22) | a set of one or more category descriptions (depending upon the context of the claim) existing in the [category description table/at least one defined list] and at least one logical operator if there is more than one category description in the filter that is used to search. |
| "category description table" (claims 1 and 22) | at least one list or array containing a plurality of category descriptions |

## CONCLUSION

Based on the analysis set forth above, the Court adopts the foregoing constructions of the disputed terms. The Court SETS a further case management conference for December 6, 2019, at 11:00 a.m. The parties are HEREBY ORDERED to submit a further joint case management report pursuant to Patent Standing Order ¶ 13 by no later than November 29, 2019.

**IT IS SO ORDERED.**

Dated: November 8, 2019

_____
JEFFREY S. WHITE
United States District Judge

18